EDWARD BRAUTIGAM, PLAINTIFF-APPELLANT, v. DEAN & COMPANY, A CORPORATION, DEFENDANT-APPELLEE.

Submitted July 3, 1913—Decided February 18, 1914.

1. A contract signed by one of a firm, with the consent of all its members, which was intending to incorporate, was not binding on the prospective corporation unless adopted or ratified by it.

2. In an action against a corporation for money had and received, there was evidence that a firm intending to incorporate made an oral agreement with the plaintiff that when incorporated, in consideration of $10,000 to be invested by the plaintiff in the prospective corporation, it would give the plaintiff one hundred shares of its capital stock and a written agreement of employment for five years at $40 per week for the first year and $50 per week for the succeeding four years, and simultaneously made a so-called "short contract," in writing, with the plaintiff, by which the plaintiff agreed to take $10,000 worth of its stock and have a contract of employment, as follows: "as soon as the company is incorporated to employ Mr. Brautigam at $40 per week for the first year, commencing June 1st, 1911," and that "a new contract will be made to take the place of this contract * * *

as soon as the new company is incorporated;" and that the plaintiff went into the employ of the company and after its incorporation paid $10,000 to the company for one hundred shares of its capital stock, which was then issued to him, and he, in turn, demanded of the defendant corporation a new contract embracing the terms of the oral agreement at the time the short contract was entered into, which demand was refused. *Held*—

(1) That there was evidence from which a jury might reasonably have found that the contract made by the firm was adopted and ratified by the corporation.

(2) That it was a court question whether the short contract was complete in itself as expressing the complete agreement of the parties.

(3) That the short contract was incomplete and contemplated a new contract embracing all the terms agreed upon between the parties, and hence parol evidence as to the terms of the short contract was admissible.

3. The question whether there is any evidence from which a jury might reasonably infer a ratification is one for the court, but where there is any evidence which admits of such inference, it becomes a matter for the determination of the jury.

4. Where plaintiff, investing money in the stock of a corporation, was entitled to have a five-year contract of employment from defendant corporation upon certain wages, the corporation's failure to give him such a contract worked a failure of the consideration, and entitled him upon a tender of the stock to receive back the money invested, less the value of the contract or benefit received by him during his actual employment, making allowance to him for services actually rendered for the benefit of the company.

On appeal from Essex Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the appellant, *Charles C. Kelly* and *Theodore Rurode*.

For the appellee, *Payne & McCall* and *Monroe Wheeler* (of the New York bar).

The opinion of the court was delivered by

KALISCH, J. The plaintiff commenced an action in attachment in the Essex County Circuit Court for money had and received, against the defendant company, to which it

put in an appearance, and the case proceeded to issue and trial, and resulted in a judgment of nonsuit, from which the plaintiff appeals.

The principal ground relied on by the appellant for a reversal is that the testimony adduced by him in the court below raised questions of fact which tended to establish a *prima facie* case of liability against the defendant, and therefore the judgment of nonsuit was improper.

The position taken by the appellant makes a review of the facts necessary for a proper understanding of the case. It appears that in April, 1911, the plaintiff advertised in a New York newspaper that he had capital to invest and desired to connect himself with a produce commission firm. Through this he met Charles M. and Wendell P. Dean, who at that time were engaged in the produce commission business as a copartnership under the name of Dean & Company, at Bath, N. Y., with a branch office in New York City, in charge of Darius L. Dean, a brother, who it seems was instrumental in bringing the plaintiff and the firm of Dean & Company together. It was at the suggestion of Darius L. Dean that the plaintiff went to Bath to see the members of the firm of Dean & Company. This was on the 23d day of May, 1911. On the same day, in the afternoon, the plaintiff took the train back to New York, accompanied by Wendell Dean, who rode with the plaintiff as far as Elmira. It was during this journey that Wendell discussed the question of the plaintiff's application for connection with the firm which resulted in a proposition made by Wendell on its behalf which, in substance, was that Dean & Company would incorporate their business, give the plaintiff one hundred shares of the capital stock and a written agreement of employment for five years at $40 per week for the first year and $50 per week for the succeeding four years, and in consideration thereof the plaintiff should invest $10,000 in the corporation about to be formed by the copartnership. To this proposition the plaintiff assented. But Wendell P. Dean, expressing some doubt as to the validity of a contract signed by him on behalf of a corporation not yet in existence, it was then agreed that the

signing of the agreement for employment for five years should be deferred until the partners were incorporated, when the corporation could execute the agreement itself. It further appears that an agreement in writing, under date of May 23d, 1911, was entered into between the plaintiff and Dean & Company. The material parts of this agreement are as follows:

"Dean & Company agree to incorporate their business and Mr. Brautigam agrees to take $10,000 worth of stock at par value. To take $6,000 of this stock as soon as the stock certificates are issued, the balance $4,000 worth of stock July 1st. Dean & Company agree, as soon as the company is incorporated, to employ Mr. Brautigam at $40 per week for the first year, commencing June 1st, 1911.

"It is understood and agreed that a new contract will be made to take the place of this contract between the new company and Mr. Brautigam as soon as the new company is incorporated."

This agreement was signed by the plaintiff and Dean & Company.

Of course this agreement was not binding on the prospective corporation, unless adopted or ratified by it. That it did both is without question, for so much was conceded by the defendant's counsel at the trial, who while the plaintiff was testifying as to what took place between Dean and himself prior to and on the day when the contract was signed, entered into the following colloquy with the court: "The Court: The question that is really presented by the testimony thus far is whether a conversation with a Mr. Wendell Dean, on the 22d day of May, is evidential in an action against the defendant corporation, which was organized early in the following June."

"Mr. Wheeler: We do not raise that point if the court please; we do not raise the point that anything that Wendell said would not bind the firm; we do not raise that point at all. Whatever the contract was this corporation stands to perform it. You need not spend time on that at all."

But the subsequent transactions between the defendant company and the plaintiff, which will be presently dealt with, were a sufficient basis on which a jury might have properly found that the contract, whatever may have been its terms. made between Dean and the plaintiff was adopted and ratified by the defendant company.

The certificate of incorporation bears date June 2d, 1911, and was filed in the office of the secretary of state of the State of New York on June 6th, 1913.

The incorporators consisted of the members of the co-partnership, Wendell P. Dean and Charles M. Dean and their manager of the New York office, Darius L. Dean. The amount of capital stock of the company was fixed at $200,000 to be divided into two thousand shares of the par value of $100 each.

Each of the partners was allotted two hundred and seventy-seven shares, and Darius L. Dean was given one share. The three brothers were constituted the directors of the corporation.

On June 1st, 1911, the plaintiff went into the employ of the defendant company, and on that date gave his check to it for $5,000 on account of the $10,000 worth of stock to be issued by it to the plaintiff. It appears that the defendant company on the 3d day of June, 1911, on the day after the signing of the certificate of incorporation, had the check certified and subsequently received the money thereon. By check, under date of July 1st, 1911, for $5,000, the plaintiff paid to the defendant company the balance for the $10,000 worth of stock to be issued by it to the plaintiff. It is an undisputed fact in the case that the defendant company received $10,000 from the plaintiff and issued $10,000 worth of stock to him therefor.

When the plaintiff made the payment of $5,000 on the 6th day of July, 1911, he at the same time presented a draft of a contract in conformity, as the plaintiff testified, with the verbal agreement made between him and Wendell P. Dean for Dean & Company before the corporation was formed, and the written agreement, called "short contract," which

was signed by the plaintiff and Dean & Company, the material parts of which have been set forth. The draft of the contract provided for the hiring of the plaintiff by the defendant "for a term of five years at an annual salary of .$2,080 for the first year, beginning June 1st, 1911, and $2,600 for the second year, payable weekly $40 a week during the first year and $50 during the next four years." The draft further made provision that if the business of the company increased so as to warrant it the salary of the plaintiff for the four last years shall be increased in proportion as may be agreed upon between the parties, but that in no event should the salary during the last four years of the agreement be less than the amount of $50 per week. The draft further provided that whereas the plaintiff had invested the sum of $10,000, and may invest more therein, in the capital stock of the corporation that he should receive dividends, declared by the company, upon the stock the same as any other stockholder in the company, and that any salary received by him under the contract was to be in addition to any dividends received by him upon his holdings of capital stock in the corporation.

The testimony of the plaintiff tends to establish that the draft of the contract submitted for the defendant's signature embodied the verbal agreement made with Dean & Company before the corporation was formed and about at the time when the memorandum or short contract in writing was made.

No notice appears to have been taken by the defendant of the contract submitted to it by the plaintiff and it was not, according to the plaintiff's testimony, until the beginning of September, 1911, that the plaintiff was apprised by Dean & Company that it refused to sign the contract submitted to it, and in its place he received from Dean & Company a proposed contract signed by it and stipulating for the employment of the plaintiff from and including September 4th, 1911, until and including May 31st, 1912, at a salary of $40 per week. It further stipulated that the services of the plaintiff from June 1st, 1911, to September 4th, 1911, under

the short contract (referring to the memorandum contract of May 23d, 1911) shall be considered as a performance in full of the short contract and release Dean & Company from an agreement to employ the plaintiff from June 1st, 1911, up to September 4th, 1911. This the plaintiff refused to sign. And so the matter rested until about the middle of September, when the plaintiff tendered back the stock to Dean & Company and demanded the return of the $10,000, which was refused.

Although at the trial the defendant expressly disclaimed the point that the corporation should not be bound by promises of its promoters and professed itself ready to carry out any contract that they had in fact made on its behalf, and though the case was tried on that theory, nevertheless the defendant in its brief makes the point that it was not bound by the contract made with Wendell P. Dean before the corporation was formed. We think that the question whether the defendant was bound by any contract made with Wendell P. Dean before the corporation was formed was a mixed question of law and fact. There was testimony which tended to establish that Wendell P. Dean was acting for his brother, Charles Dean, and was authorized by him to make such agreement with the plaintiff as he saw fit, for the interest of the corporation to be formed, and that Darius L. Dean, who was then manager for Dean & Company, though he had no pecuniary interest in the concern, but being the manager of the branch office, was thus fully made conversant with the arrangements made by Dean & Company with the plaintiff. Darius L. Dean, as has already been stated, was given one share of stock so that he could qualify as a director. The three brothers are the corporation. Now, from the facts that the company received and accepted the two checks for $5,000 each of the plaintiff, for the stock issued to him after the formation of the company and took the plaintiff into its employ and paid him $40 per week, a jury might reasonably have found that the defendant company ratified the contract, termed the short contract. Whether this short contract was complete in itself as expressing the complete agreement of

the parties was a court question. For if it was a complete agreement then it must speak for itself and parol testimony of conversations had between the parties or of declarations made by either of them whether before or after or at the time of the completion of the contract, will be rejected. But if the written contract does not purport to contain the whole agreement, and it is apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence is admissible. *Naumburg* v. *Young,* *15 Vroom* 331. The trial judge ruled that the contract was incomplete and admitted oral testimony as to the terms of the agreement, which we think was proper.

There are two statements in the short contract which indubitably point to its incompleteness, and that it was in contemplation of the parties to enter into a new contract embracing all the terms orally agreed upon between them, when the defendant company become incorporated.

The first statement is: "Dean & Company agree as soon as the company is incorporated to employ Mr. Brautigam at $40 per week for the first year, commencing June 1st, 1911." The expression "for the first year" clearly indicates that it had been agreed upon by the parties that the plaintiff was to be employed for a series of years. The second statement is "that a new contract will be made to take the place of this contract between the new company and Mr. Brautigam as soon as the company is incorporated."

Now the term "a new contract will be made" negatives the idea that it shall be upon the same terms as the old one, but clearly points to a later contract to be made embracing all the terms agreed upon between the parties, and which new contract was to take the place of the temporary one.

The trial judge erred in ruling that the ratification, if any "is naturally referable to the short contract rather than to an unwritten contract resting in an oral arrangement and not binding unless imposed upon the company as its own obligation either by express or implied authority." Undoubtedly the question whether there is any evidence from which a jury might reasonably infer a ratification is one for

the court, but where there is any evidence which admits of such an inference it becomes a matter for the determination of a jury. We are unable to discern the distinction attempted to be drawn by the learned judge between a ratification of that part of the contract expressed in writing and that which was not. For if parol evidence was admissible to explain what the terms of the contract really were, and there is testimony from which a jury might reasonably infer that there was a ratification of the contract, then it is difficult to comprehend how such ratification can be limited to the incomplete written contract. We think there was testimony from which a jury might have reasonably concluded that after the company was incorporated and at the time the plaintiff paid the $10,000, the corporation which was composed of the three Deans, knew that at and before the making of the short contract, Wendell P. Dean, on behalf of the corporation to be formed, had agreed to give the plaintiff as an inducement to him to invest the $10,000 in such new concern, a five-year contract upon the terms testified to by the plaintiff. If they had that knowledge then the acceptance of the plaintiff's $10,000 by the corporation and the issuance of stock to that amount to the plaintiff and his employment at $40 a week constituted a ratification of the terms of the contract as testified to by the plaintiff.

Furthermore, from the undisputed facts, it appears that the defendant made no attempt to conform with the short contract. It tendered a new contract to the plaintiff in place of the short contract, but substantially different in terms. It is true that the plaintiff remained in the employ of the defendant company until April 17th, 1912, when he resigned, he having drawn $40 a week salary for his services. But it also further appears that during all this time he was seeking to have the defendant perform its part of the contract but without avail. Upon the whole if the plaintiff was entitled to have a five-year contract from the defendant upon the terms as testified to, then the failure on the part of the defendant company to give the plaintiff such a contract, worked a failure of the consideration which was the very

inducement to the plaintiff to invest $10,000 in the capital stock of the defendant company and the plaintiff was therefore entitled upon a tender of the stock to the company to receive back the amount invested by him less the value of the contract or benefit received by him during his actual employment by the company, making due allowance to him for services actually rendered for the benefit of the company.

For the reasons given the judgment of nonsuit will be reversed and a *venire de novo* awarded.