THE ZONE COMPANY, PLAINTIFF-APPELLANT, v. SERVICE TRANSPORTATION CO., INC., DEFENDANT-RESPONDENT.

Submitted October 31, 1947—Decided March 10, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the appellant, *George W. King* (*William L. Rae,* of counsel).

For the respondent, *Edward A. Smarak.*

The opinion of the court was delivered by

HEHER, J.   Plaintiff sues for the price of 330 gallons of heavy duty roof coating sold to defendant under an agreement in writing which did not fix the time of the delivery of the goods nor the mode of transportation.   The District Court

Judge, sitting without a jury, found that the merchandise was not delivered within a reasonable time; and accordingly he gave judgment to defendant.

The writing, styled an "order blank," was in terms an order for the goods and a promise to pay the price thereof, as therein specified, signed by defendant and accepted by plaintiff. The agreement was made upon certain "conditions" embodied in the writing—these among others: "It is mutually agreed between buyer and seller that this order contains the entire agreement of the parties and neither customer nor seller shall be bound by any agreements not contained in the original of this Order. * * * Title of goods passes to buyer upon delivery to transportation company. Order subject to acceptance of Company and payable at seller's office in Fort Worth, Tarrant County, Texas." The order was dated August 2d, 1946; and it was accepted by plaintiff on August 5th. As stated, there was no time fixed for delivery of the goods; nor was there a provision for shipment by a particular carrier. There was a direction merely to "ship to Secaucus." On August 16th plaintiff delivered the ordered commodity to the Erie Railroad Company at Cleveland, Ohio, for shipment to defendant at Secaucus, New Jersey. On September 5th following the Railroad Company notified defendant of the arrival of the merchandise at its terminal in Weehawken, but defendant had advised plaintiff's agent on August 23d of its "cancellation of the order," and the tender of delivery was refused.

The judge concluded that the agreement "was not complete on its face, in that it did not indicate the time and means of delivery;" and he overruled objections to evidence offered by defendant of a "conversation" between its president and plaintiff's agent in the course of the negotiations which eventuated in the contract "as to how and when the said merchandise was to be delivered," which he deemed "a material part of their agreement, * * * in order to determine, in accordance with the common law and the Uniform Sales Act, whether the merchandise was delivered within a reasonable time;" and he found that the commodity "was not delivered within a reasonable time or in the manner agreed upon."

The evidence thus adduced from defendant's president, Buchmuller, as revealed by the state of the case settled by the judge, was that in the conversation which preceded the giving of the order he informed plaintiff's representative, Nagy, that "the trucking industry contemplated a strike on September 1st" following, and if it occurred, defendant's "terminal would be loaded with freight which might be damaged if the roof was not in good condition;" that they examined the roof and found "many leaks;" that Nagy said the needed roof coating would be delivered from plaintiff's Ohio warehouse in ten days, "so that the roof could be repaired before September 1st;" that Buchmuller then suggested shipment by motor truck rather than by rail, and offered to pay the difference in the carriage charges, and Nagy said that "such arrangements would be satisfactory to the plaintiff;" that Buchmuller thereupon telephoned, in Nagy's presence, to a motor trucking concern in Carlstadt, New Jersey, and learned that shipment by that facility "normally would take three days;" that Buchmuller then "instructed" Nagy to ship the merchandise by this truckman, the difference in the carriage charges to be paid by defendant; and that Nagy called on Buchmuller on August 8th and advised him that plaintiff had "confirmed the order" and the commodity "was being shipped from Ohio that day via" the Carlstadt trucking company, with direction "to rush the shipment" to its Carlstadt terminal, for delivery to defendant on August 12th. All this evidence stood uncontradicted; Nagy did not go upon the witness stand. Although the particular language is ambiguous, the state of the case suggests that Buchmuller was aware at the time of the delivery of the goods to the rail carrier for shipment to defendant.

While the judge deemed the writing to be but a partial integration, he received the extrinsic evidence of the asserted parol agreement fixing "the time and means of delivery" on the issue of whether "the merchandise was delivered within a reasonable time;" and therein he fell into error.

Under the contract, the delivery of the goods to the rail carrier on August 16th, for carriage to the buyer, constituted a delivery of the goods to the buyer. As we have seen, the

writing itself expressly provided for the transfer of title to the buyer upon the delivery of the goods to the carrier; and under the Sales Act delivery of the goods sold to a carrier (whether named by the buyer or not) for transmission to the buyer is deemed to be a delivery of the goods to the buyer, where by the contract the seller is authorized or required to send the goods to the buyer, except in the cases provided for in *Rule* 5 of *section* 46:30–25, or unless an intent *contra* appears. *Rule* 5 of *section* 46:30–25 has reference to the time of the passing of the title to the goods constituting the subject-matter of the contract to sell. It provides that, unless a different intention appears, the property in the goods does not pass until delivery of the goods to the buyer or arrival at "the place agreed upon," if the contract "requires the seller to deliver the goods to the buyer, or at a particular place or to pay the freight or cost of transportation to the buyer, or to a particular place." It is a rule of interpretation merely, operative only where a different intention does not appear. Here, the contract itself provided for "shipment" by the seller and for transfer of title upon "delivery to transportation company." The risk of loss is the buyer's after the property in the goods is transferred to the buyer. *R. S.* 46:30–28. Compare *San Francisco Iron and Metal Co.* v. *Sweet Steel Co., 23 Fed. Rep. (2d)* 783. The delivery to the buyer, through the carrier under section 46:30–52, *supra,* does not, of course, constitute an acceptance of the goods by the buyer. The delivery thus made to the buyer is subject to the seller's right of stoppage *in transitu* and to the buyer's right to reject for non-conformity with the contract. *Vide Kelsea* v. *Ramsey & Gore Manufacturing Co., 55 N. J. L.* 320.

The finality of the writing as the embodiment of the terms of the act of the parties depends upon their intention. Where there was an intention to merge all prior subjects of negotiation and agreement in a single memorial as the final repository of the understanding, the writing is conclusive of the terms of the agreement, and extrinsic evidence to vary or contradict the integration is inadmissible. This is not a rule of evidence merely, but of substantive law, to make for certainty and to prevent imposition and fraud. But there is a

difference of view as to how the intention is ascertained. The memorial itself has been termed "the only safe criterion" of the intent. *Naumberg* v. *Young*, 44 *N. J. L.* 331. Elsewhere, the rule is to look for the intent in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice, although where the particular element of the alleged extrinsic negotiation is dealt with at all in the writing, then presumably the writing was meant to represent all of the transaction on that element. *Mitchill* v. *Lath*, 247 *N. Y.* 377; 160 *N. E. Rep.* 646; *Cohn* v. *Dunn*, 111 *Conn.* 342; 149 *Atl. Rep.* 851; *Wigmore on Evidence* (3d ed.), § 2430; *Restatement of Law of Contracts*, § 240. But we have no occasion to pursue the inquiry.

Here, the common intent to make the writing the exclusive memorial of the parties' contractual undertakings is expressly affirmed by the document itself. The parties stipulated that the writing embodied their "entire agreement" and that neither was "bound by any agreements not contained" therein. And thus by force of the Sales Act, the parties bargained for delivery of the subject-matter within a reasonable time; and delivery of the subject-matter within a reasonable time to a common carrier chosen by the seller constituted delivery to the buyer. *R. S.* 46:30–49, 46:30–52. The seller may select any reasonable mode for transmission of the goods, if there is no agreement for a certain route. Such were the terms of the contract by plain implication of fact, as in the case of *Mantell* v. *International Plastic Harmonica Corp.*, 141 *N. J. Eq.* 379; and therefore evidence of an extrinsic agreement for delivery at a fixed time and by a specified carrier or means of transportation was inadmissible as in contradiction of the integration. The case is unlike *Stevens-Adamson Manufacturing Co.* v. *Bigelow*, 84 *N. J. L.* 585; *affirmed*, 86 *Id.* 707, where there was but a partial integration. And where there is a clear implication of fact from the writing itself that it fully expresses the whole bargain between the parties (here it is explicit), contradiction of the implication by parol evidence is no more permissible than the contradiction of the express terms of the writing. There is an obvious difference between an implication based on an inference of actual mani-

festation of assent and an implication made by the law to fill a gap in what has been expressed. *Marcus & Co., Inc.,* v. *K. L. G. Baking Co., Inc.,* 122 *Id.* 202; *Cohn* v. *Dunn, supra; Williston on Contracts* (*rev. ed.*), §§ 633, 640; 32 *C. J. S.* 789; 46 *A. J.* 343. Extrinsic evidence of an agreement at variance with an implication of fact in the integration itself is on principle inadmissible, for what is clearly implied from the writing derives its force from the common intention of the parties equally with the express stipulations. The memorial here on its face purports to embody all the stipulations of the contract; and the admission of parol evidence of an agreement for performance at a fixed time and by the medium of a particular carrier served to vary the implications of fact in these particulars contained in the writing, and thus there was error in matter of law.

What constitutes a reasonable time for delivery of the subject-matter of a contract to sell or of sale ordinarily depends on the circumstances presumably in the view of the parties in a general way when the contract was made, subject to the basic rule that a contemporaneous oral agreement for delivery of the subject-matter at a specified time is not admissible to establish the time of delivery. *Eppens, Smith & Weimann Co.* v. *Littlejohn,* 164 *N. Y.* 187.; 58 *N. E. Rep.* 19; 46 *A. J.* 342. Certainly, evidence of a parol or extrinsic agreement for the shipment of the goods by a particular carrier and mode of conveyance was not admissible on the issue of what constituted a reasonable time for performance of the contract of sale in the case under review. Under the contract, which embodied the provisions of the Sales Act in the particulars mentioned, delivery of the goods to the carrier constituted delivery to the buyer; and it is evident that the judge did not determine whether such delivery on August 16th, but one week after defendant was notified of the acceptance of the order, was reasonable under the circumstances. Plainly, the determinative was the parol evidence received in proof of matters deemed "a material part" of the contract. If the judge was correct in his assumption of a partial integration of the jural understanding, evidence of the alleged oral stipulation for delivery at a fixed time by a specified

carrier and means of transportation was, of course, admissible on the issue of performance; and, acting on this erroneous premise, the judge made the oral understanding the measure and test of the time for performance that was reasonable, *i. e.,* the parties themselves made the determination, and bound themselves accordingly, although time was not expressly made of the essence. The time for delivery and the mode of conveyance were interrelated. The judge misdirected himself in point of law. The legal effect under the contract of delivery to the rail carrier was either misapprehended or wholly disregarded.

The judgment is reversed, with costs; and a new trial is awarded.