**The UNITED STATES of America**

v.

**The CLEMENTON SEWERAGE AUTHORITY, Defendant and Third-Party Plaintiff,**

v.

**Anne K. WISE, Executrix of the Estate of Albert G. Wise, Deceased, and John G. Reutter and John G. Reutter Associates, Jointly, Severally, or in the Alternative, Third-Party Defendants.**

**Anne K. Wise, Executrix of the Estate of Albert G. Wise, Deceased, Appellant.**

**No. 15580.**

United States Court of Appeals Third Circuit.

Argued Feb. 24, 1966.

Decided July 21, 1966.

John J. Finnegan, Jr., Camden, N. J. (Finnegan & Barth, Camden, N. J., on the brief), for appellant Anne K. Wise, etc.

W. Louis Bossle, Camden, N. J., for appellee Clementon Sewerage Authority.

Before HASTIE and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

### OPINION OF THE COURT

HASTIE, Circuit Judge.

The Clementon Sewerage Authority was created as a municipal agency with authority to construct a sewerage system for the borough of Clementon, New Jersey. To this end, the Authority contracted with Albert Wise, an engineer, to prepare preliminary studies and final plans for the system, and to supervise construction. To partially finance the project, the Authority applied for and received from the federal Housing and Home Finance Agency the sum of $15,800 to be applied to the cost of preliminary plans and studies. After completing preliminary studies and while difficulties concerning final plans remained unresolved, Wise died. His interest is now represented by his estate. The project was completed by another engineer.

After the Authority failed to repay the sum advanced by the federal agency, the United States initiated this action against the Authority for repayment of the $15,800. In turn, the Authority, alleging a breach of contract by Wise, filed a third-party action against the estate of Wise for return of the sum of $15,800 which it had paid him for the preliminary studies. The estate of Wise counterclaimed for a balance, over and above the $15,800 received, allegedly due for further work performed under the contract in the preparation of final plans.

The district court, sitting without a jury, found for the government in its action against the Authority and for the Authority in its third-party action against Wise's estate. The estate's counterclaim was dismissed. The Authority did not appeal from the judgment against it in favor of the United States. The estate has appealed from the judgments in favor of the Authority on both the Authority's third-party claim and the estate's counterclaim. Thus, the only parties before this court are the Authority and Wise's estate. The dispute turns upon the construction of the contract between the Authority and Wise. This was, in all relevant contacts, a New Jersey transaction and the contested legal issues are questions of New Jersey contract law.

An unsigned written contract between the Authority and Wise, dated December 11, 1958, pleaded and in evidence in

the instant case, contains the following term:

"Engineer covenants to complete (a) and (b) [(a)—preliminary studies, (b) —final plans] herein not later than April 1, 1959. * * *"

During the trial, the estate introduced a signed agreement, also dated December 11, 1958, which was identical with the contract pleaded except that it did not contain the above quoted time term. The estate claimed that the writing without the time term was the true contract. In order to find whether the contract with the time term or the one without it was the ultimate written agreement, evidence of the surrounding circumstances was admitted. The explanatory evidence, some of it rather equivocal, indicated that Wise wanted to perform the engineering work associated with the sewerage project and to that end, after discussion with the members of the Authority, submitted a proposed written contract on December 11 for the Authority's approval. The Authority wanted to add a time limit for completion of the preliminary studies and final plans and Wise agreed to this. However, in order to expedite the granting of a Housing and Home Finance Agency advance under 40 U.S.C. § 462(a) for "action preliminary to and in preparation for the construction of public works", the Authority's officers signed the contract as drawn. This was done on Wise's assurance that a new but identical contract with the addition of a time term would be executed. The Authority's solicitor noted such a term on the back of the initial writing. Accordingly, the lower court found that the time term writing was adopted and substituted for the original writing at a subsequent meeting of the Authority and that the later writing was the "paramount contract between Wise and the Authority".

■■ We think the factual finding that this writing, though not signed, was meant to be the written expression of the bargain is sufficiently supported by the testimony in the record. The parties recognize that the parol evidence rule does not apply to such a resolution of conflict between writings. There was no error in the trial court's finding that the time term writing was the ultimate and legally effective written expression of the bargain.

Apart from the time term, the pertinent substantive provisions of the written contract read as follows:

"* * * [T]he Engineer agrees to furnish and perform professional services as hereinafter set forth:

"(a) Preliminary studies including all necessary preliminary investigation, reports, preliminary general plans, estimates and costs for a proposed sewer system and plant, conferences with Authority, State of New Jersey Board of Health and any other governmental agency and preparation of application for any available governmental loans or grants.

"It is mutually agreed that the Engineer shall be compensated for this work in a sum of $15,800.00 and that this fee shall be paid not later than receipt of payment from the U. S. Housing and Home Finance Agency.

"(b) Complete general detailed final plans and specifications covering every phase of construction of both the sewer system and disposal plant including materials to be used and methods to be followed, said plans to be approved by the New Jersey State Department of Health. The Engineer will, when bids are submitted, compute and tabulate the same and recommend to the Authority which bid or bids, if any, should be accepted.

"For this service the Authority agrees to pay the Engineer the sum of $16,600.00.

"(c) Supervise the construction of the sewer system and the plans and stake out sewer lines and plant for construction.

"The Authority agrees to pay the Engineer for this service the sum of 7% of the cost of the complete sewer system including pumping stations, force mains, equipment and plant, deducting therefrom moneys paid the

Engineer by the Authority under Sections (a) and (b) above. The payment for the work described in this paragraph shall be paid monthly as constructions progress, based on the work constructed and accepted by the Engineer on behalf of the Authority."

In addition, the court found as a matter of fact that in the discussions surrounding the written agreement the Authority instructed Wise that

"* * * if he did not believe he had the necessary ability and experience to so plan and design the project that the cost to the taxpayers would be no more than an initial sewer connection charge of $100.00 for each unit, together with an annual sewer rental of $55.00 to $60.00, he was not to undertake work. He was cautioned, further, that in the interest of the taxpaying public to be serviced by the project, a higher rental was not warranted and would result in a bond offering at too great a premium and to a less than enthusiastic municipal bond market. He gave his assurance that he possessed the necessary qualifications and that the project when completed would come within the specified limitations."

Then, giving effect to these oral representations, the court, found a material breach in Wise's "failure * * * to deliver Preliminary as well as Final Plans * * * within the precise cost * * * limitations". Thus, the court has found that Wise agreed to plan a project which could be paid for and operated by charging the homeowner not more than a $100 connection fee and a $60 annual charge. Since no writing before the court contains such a limitation, the court's supplementation of the written agreement by adding this cost condition is challenged as a violation of the parol evidence rule.

■■ It is generally recognized that the parol evidence rule is a rule of substantive contract law and not a rule of evidence. In familiar statement it provides that "when two parties have made a contract and have expressed it in a writing to which they have both assented

as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understanding and negotiations will not be admitted for the purpose of varying or contradicting the writing". 3 Corbin, Contracts, 357. To the same effect, section 237 of the Contracts Restatement provides that "* * * the integration of an agreement makes inoperative to add to or to vary the agreement all contemporaneous oral agreements relating to the same subject-matter; and also, * * * all prior oral or written agreements relating thereto. * * *"

■ The touchstone of the rule's application is the fact of an "integrated" written contract, and "integrated" is used as a word of art. "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." Restatement, Contracts § 228. However, the parol evidence rule itself gives no indication whether a particular writing constitutes an integration. "The * * * 'rule' does not itself purport to establish the fact of 'integration'; and until that fact is established the 'rule' does not purport to have any legal operation." 3 Corbin, Contracts, 442. Therefore, in this case it must be determined, in manner consistent with New Jersey law, whether the present agreement had been integrated.

■ The authoritative statement of the manner of proving integration in New Jersey appears in Atlantic Northern Airlines v. Schwimmer, 1953, 12 N.J. 293, 96 A.2d 652, where it is made clear that extrinsic evidence is admissible to determine a writing's status as an integration:

"Whether a particular subject of negotiations is embodied by the writing depends wholly upon the intent of the parties; but the intent must be judged by an external standard. * * * 'The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether

certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered.'

" \* \* \*

"Thus, the basic question here is whether the parties assented to the writing as the complete integration of their agreement. The writing itself is not conclusive of this issue. \* \* \* " 1

Under the rule of the *Schwimmer* case, the district court properly admitted testimony of the parties' discussions of the proposed project in terms of acceptable ultimate cost.

■ We have considered that in admitting this evidence the court characterized the contract as an "integrated" one, "partially written and partially oral". Technically, this is a contradiction in terms, for, as mentioned before, integration denotes a writing that in itself is the final and complete embodiment of the agreement. Thus, the conclusion that part of the contract was oral is inconsistent with use of the word "integrated" in describing the contract. In effect, the district court found that the contract was not an integrated one, but rather was an agreement part of whose terms were in writing and part oral. This view of the court's conclusion is supported by the court's citation to section 583 of Corbin which discusses non-integrated partially oral contracts.

■ Since the contract is not integrated, the parol evidence rule does not apply and there is no need to consider whether the cost term varies or adds to the written portion of the agreement. Rather, the issue becomes the correctness of the determination that an oral understanding as to permissible cost of the entire project was part of the bargain. And since this is a question of manifestation of intention, the court's finding is one of fact, subject to the clearly erroneous rule.

■ The evidence shows that the parties discussed the ultimate cost of the project from the beginning and that throughout negotiations the Authority stressed the importance of cost. Moreover, it was testified that Wise assured the Authority on this score. Thus, the basic understanding of the parties was that the ultimate cost of the project must be within the stated limits and that it was Wise's responsibility to plan the sewerage system accordingly. While it is unusual to omit so important a term from a writing as comprehensive as this one, on the present record it is reasonable to conclude that the cost limitation underlay the whole agreement and was an essential term thereof. Cf. Corbin, Contracts § 590; Lawrence v. Tandy & Allen, Inc., supra note 1.

Viewing the contract as containing an undertaking by Wise that the project, when completed, would come within the cost limitation, we next consider the relation of this term to the various other undertakings of Wise. The agreement called for the following performances by Wise: (1) preliminary studies for which he would be compensated $15,800; (2) final plans and specifications for all the components of the project for which he would receive $16,600, and (3) supervision of the construction for which he would receive additional compensation sufficient to make his total compensation under the entire contract 7% of the total cost of the construction of the system.

1. 12 N.J. at 304, 306, 96 A.2d at 657, 658; Accord, Lawrence v. Tandy & Allen, Inc., 1953, 14 N.J. 1, 100 A.2d 891.

Some of the older New Jersey cases apparently determine the status of a writing as the complete and final expression of the agreement between the parties by reference to the writing alone. See e. g. Brautigam v. Dean & Co., 1914, 85 N.J.L. 549, 89 A. 760; cf. Crewe Corp. v. Feiler, 1958, 49 N.J.Super. 532, 140 A.2d 411. Moreover, if the writing contains a statement to the effect that it is the complete and final statement of the agreement, the courts may give the statement conclusive effect in determining integration. See e. g. Zone Co. v. Service Transp. Co., 1948, 137 N.J.L. 112, 57 A.2d 562.

On the basis of this failure to meet cost limitations, the court below concluded that:

> " * * * the failure of Wise to deliver Preliminary as well as Final Plans and Specifications, within the precise cost and time limitations established by the integrated contract, constituted a failure of consideration with regard to mutual rights and obligations, breaching the contract in its entirety. * * * [The Authority] is entitled in law to relief from the unconsummated bargain by way of recoupment [in the sum of $15,800 paid for the preliminary studies].
>
> " * * *
>
> " * * * Wise's * * * failure of performance [also] forecloses his claim of $16,600.00 [for final plans]. * * The Preliminary and Final Plans were but distinct, mutually dependent phases of one integrated contract requiring complete performance. * * * "

It is significant that the trial court did not find or conclude that Wise's preliminary studies and plans were an unsatisfactory performance of that part of the bargain. These preliminary studies were submitted before April 1, 1959, the date specified in the contract, and were approved by the Authority at its meeting of June 8, 1959. The Authority's formal resolution recited that "the * * * planning documents have been carefully studied and are considered to comprise adequate planning of the public work essential in the community and within the financial ability of the Clementon Sewerage Authority to construct". A subsequent resolution, dated September 28, 1959, after reciting that the Housing and Home Finance Agency had approved the preliminary plans and had advanced to the Authority $15,800 to cover the cost thereof, authorized payment of that sum to Wise. Payment was made accordingly.

In addition, there was testimony that in a professional view this preliminary work was competently performed. And the New Jersey Department of Health found, as its Principal Engineer testified, that Wise's scheme and proposals satisfied the standards and requirements of that authoritative public agency. On the whole record, we think the conclusion is unavoidable, though not explicit in the trial findings, that the preliminary studies and plans as prepared and submitted by Wise constituted an acceptable performance of that part of his contractual undertaking.

Thus, the district court's conclusion that the Authority was entitled to reclaim the payment made for this work is supportable, if at all, only on the theory that the contract was an indivisible whole, in the sense that Wise's failure, in the second stage of his work, to devise and submit timely final plans which could be carried out within the agreed cost limitation was such a breach as to deprive him of all right to payment under the contract, even for the acceptable and accepted preliminary studies and plans.

Formally, the written contract treats the preparation of "preliminary studies" as a distinct item with an agreed sum of $15,800 stated as the consideration to be paid for this work "not later than receipt of payment from the U. S. Housing and Home Finance Agency". This apportionment of consideration with a provision for early payment for preliminary studies is in itself a substantial indication that the right to such payment could be fully earned by the proper completion of this work without regard to subsequent performance in the preparation of final plans. Cf. Carrig v. Gilbert-Varker Corp., 1943, 314 Mass. 351, 50 N.E.2d 59, 147 A.L.R. 927; Rothman Realty Corp. v. MacLain, 1951, 16 N.J.Super. 280, 84 A.2d 482, aff'd. 21 N.J.Super. 172, 91 A.2d 101.

Moreover, in its nature much of the preliminary work was different and distinct from, if a necessary prelude to, detailed final planning of a sewerage system. Preliminary feasibility studies were required. It had to be determined what land and easements the borough would need to purchase. A survey of the

borough was necessary to determine all relevant elevations. And finally an overall preliminary scheme, including appropriate pumping and lift stations and a treatment plant, had to be outlined in such a way that the proposal would merit federal financial assistance and comply with minimum requirements of the New Jersey Department of Health.

 Wise accomplished all of this. While his detailed final plans proved too costly and his successor had to repeat most of this second stage planning, it has not been shown—indeed, it does not seem to be argued—that Wise's preliminary work failed to serve its principal purposes or that his successor had to repeat that first phase of the work. All of these factors considered, we are satisfied that the preliminary studies and plans were a separable part of the contract and that the preliminary work as performed and accepted entitled Wise to the $15,800 which the contract specified as compensation for that phase of the project.

 In contrast, it is clear on the record that Wise's final plans were unacceptable when finally submitted. The Authority properly called in a consulting engineer for advice on next steps. A few weeks thereafter Wise died and the Authority employed a new engineer who prepared acceptable final plans upon which the sewerage system was built within cost limitations. Thus, as the trial court found, Wise's final plans were all but useless and did not amount to a substantial performance of his obligation under the second phase of the contract. Therefore, his estate was not entitled to compensation for that work.

That part of the judgment which awards the Authority $15,800 against Wise's estate will be reversed, and that part of the judgment which denies Wise's estate any relief on its counterclaim for additional compensation will be affirmed. Neither party shall recover costs against the other on this appeal.