**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4725-18T2

FOULKE MANAGEMENT
CORPORATION,

     Plaintiff-Appellant,

v.

DOMESTIC LINEN SUPPLY CO.,
INC., a New Jersey Corporation,

     Defendant-Respondent.

_____

FOULKE MANANGEMENT
CORPORATION,

     Plaintiff,

v.

DOMESTIC LINEN SUPPLY CO.,
INC., a Pennsylvania Corporation,
and AMERICAN ARBITRATION
ASSOCIATION,

     Defendants.

_____

Argued January 28, 2020 – Decided March 5, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket Nos. L-4057-13 and L-2354-14.

Laura D. Ruccolo argued the cause for appellant (Capehart & Scatchard PA, attorneys; Laura D. Ruccolo and Laura M. Danks, on the briefs).

Joseph D. Di Guglielmo argued the cause for respondent (Burton Neil & Associates, and Joseph D. Di Guglielmo, attorneys; Joseph D. Di Guglielmo, of counsel and on the brief).

PER CURIAM

This matter is before us for the third time. Plaintiff Foulke Management Corporation (Foulke) appeals from an order entered by the trial court on March 25, 2019 finding Foulke entered into contracts with Domestic Linen Supply Co., Inc. (Domestic PA) and an order entered on June 19, 2019, which compelled Foulke to arbitrate its dispute with defendant, Domestic PA. We affirm both orders.

I.

We derive the following facts from the parties' motion papers and the facts established at the evidentiary hearing. There are two businesses with the name Domestic Linen Supply Co., Inc. One of those businesses is a New Jersey

A-4725-18T2

corporation, Domestic Linen NJ, and the other is a Pennsylvania corporation that is authorized to conduct business in New Jersey, Domestic Linen PA.

Foulke engaged in three automobile dealerships known as Cherry Hill Triplex, Cherry Hill Dodge, and Cherry Hill Mitsubishi. In March of 2010, Foulke entered into three uniform supply service contracts with an entity called Domestic Linen Supply Co., Inc. to rent uniforms for its businesses. All three contracts list Domestic PA's address as Philadelphia, Pennsylvania, and require arbitration of disputes when the amount in controversy exceeds $10,000. The contracts state that they should be construed in accordance with Pennsylvania law, and notices should be sent to the company's manager in Philadelphia.

In 2013, Foulke filed a complaint against Domestic Linen NJ, in which it asserted claims of breach of contract, common law fraud, and violations of the New Jersey Consumer Fraud Act.[1] Domestic Linen NJ filed a motion to dismiss the complaint, arguing that Foulke entered into the contracts with Domestic Linen PA, not Domestic Linen NJ. The prior trial judge did not rule on that issue and ordered Foulke to arbitrate the dispute, as required by the agreements set forth in the contracts.

---

[1] N.J.S.A. 56:8-1 to -210.

Domestic Linen PA then filed a demand for arbitration, asserting it was the party that entered into the subject contracts with Foulke. In response, Foulke filed an action to enjoin the arbitration proceeding on the ground that another trial judge had ruled that Domestic Linen NJ was the proper contracting party. The prior trial judge restrained Domestic Linen PA from proceeding with the arbitration. Domestic Linen PA appealed that decision.

We reversed both orders, consolidated the cases, and remanded to the trial court for an evidentiary hearing to determine whether Domestic Linen PA or Domestic Linen NJ was the party with whom Foulke had entered into the contracts. Foulke Mgmt. Corp. v. Domestic Linen Supply Co., No. A-0752-14 (App. Div. Mar. 14, 2016).

On remand, the prior trial judge did not comply with our mandate and issued an order on February 2, 2018, compelling a jury trial to determine the proper parties. He also denied Domestic NJ's motion for reconsideration on March 15, 2018. We reversed and vacated the February 2, 2018 and March 15, 2018 orders and remanded to the trial court for a non-jury evidentiary hearing on the issue as to which defendant was the party to the contract with Foulke. Foulke Mgmt. Corp. v. Domestic Linen Supply Co., No. A-3219-17 (App. Div. Dec. 5, 2018).

A-4725-18T2

On the second remand, a different trial judge conducted an evidentiary hearing on February 22, 2019. In a March 22, 2019 oral opinion, the trial judge found that Foulke's service manager, Joe Scicili, now deceased, negotiated three uniform rental agreements with Domestic PA's service manager, Lawrence Messineo. The trial court also found that William Kopp, Foulke's general manager and representative, "signed each agreement but never read page [two] which contains both a choice of law clause (Pennsylvania) and arbitration clause." In conclusion, the judge found Foulke entered into the contracts with Domestic PA.

In an April 18, 2019 order, the trial judge permitted Foulke to file a motion for leave to file and serve an amended complaint to bring its claims against Domestic PA applying retroactively to the initial filing date of the complaint in 2013. The motion was granted, and Foulke filed its amended complaint on April 2, 2019. Domestic PA then moved to dismiss the complaint and compel arbitration as per the arbitration provisions set forth in the contracts. On June 19, 2019, the trial judge ordered the parties to arbitrate their dispute and dismissed the complaint.

The contracts include an arbitration clause at paragraph fifteen, which states:

A-4725-18T2

In the event of any controversy or claim in excess of $10,000.00 arising out of or relating to this agreement, including but not limited to questions regarding the authority of the persons who have executed this agreement, the question, controversy or dispute shall be submitted to and settled by arbitration to be held in the city closest to the city in which the branch office of the [c]ompany which serves the [c]ustomer is located. Said arbitration shall be held in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association [(AAA)] except any rules which require the parties to use the [AAA] as their sole [a]rbitration [a]dministrator. Judgment upon and award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The filing party may use either court or arbitration where the claim is less than $10,000.00. Venue for any court proceeding shall be in the county of the [c]ompany's branch office servicing the [c]ustomer. The judge or arbitrator shall include as part of the award all costs including reasonable attorney fees and arbitration fees of the non-breaching party where it is determined that one of the parties has breached the agreement.

Foulke argued that it was not made aware of these terms and signed the contracts, but Kopp, its signatory, did not read the second page where the arbitration clause was printed. Additionally, Foulke argued that the arbitration clause was unconscionable and lacked mutual assent. Domestic argued that both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32. controlled, thus the arbitration agreement here was enforceable.

A-4725-18T2

In his June 19, 2019 oral opinion, the trial judge found there was mutual assent and waiver of the statutory right to adjudicate the parties' dispute in court. The judge also explained there was "plain meaning in the language" that claims in excess of $10,000 shall be settled by arbitration with the AAA. However, the judge noted that "[t]he filing party may use either court or arbitration where the claim is less than $10,000." In conclusion, the judge stated that these parties are "two rather large companies with experience in the area of contracting" and "experience in the area of arbitration clauses."

On appeal, Foulke argues that: (1) the arbitration agreement is unenforceable because there was no mutual assent; (2) it was not provided with proper notice of the arbitration agreement; (3) the arbitration language does not address statutory claims; (4) the arbitration agreement is unconscionable and was fraudulently induced; (5) the trial court erred by admitting parol evidence to "reform" the agreement and by permitting "surprise witnesses" to testify at the hearing; and (6) the trial court's finding that Domestic PA is the contracting party is against the weight of the evidence.

II.

We apply a de novo standard when reviewing a motion judge's determination of the enforceability of a contract. Goffe v. Foulke Mgmt. Corp.,

238 N.J. 191, 207 (2019). When reviewing arbitration clauses within contracts, "[t]he enforceability of arbitration provisions is a question of law; therefore, it is one to which we need not give deference to the analysis by the trial court . . . ." Ibid.

We begin by recognizing the Federal and New Jersey Arbitration Acts express a general policy favoring arbitration. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014); see also 9 U.S.C. §§ 1 to 16; N.J.S.A. 2A:23B-1 to -32. "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015) (quoting Cty. Coll. of Morris Staff v. Cty. Coll. of Morris Staff Ass'n, 100 N.J. 383, 390 (1985)). Although enforcement is generally favored, it "does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441.

A valid arbitration clause "must state its purpose clearly and unambiguously." Id. at 435. Further, an arbitration agreement "must be the product of mutual assent," which "requires that the parties have an understanding of the terms to which they have agreed." Id. at 442 (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)).

Our Supreme Court clearly set forth that a party "cannot be required to arbitrate when it cannot fairly be ascertained from the contract's language that [he or] she knowingly assented to the provision's terms or knew that arbitration was the exclusive forum for dispute resolution." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 322 (2019).

In its brief, Foulke contends the reverse sides of the contracts contain paragraphs five through twenty-one, mostly consisting of small font letters with no headings. Kopp testified that he did not see the back of the contracts and did not read, sign, or initial them. Foulke also asserts that the arbitration agreement language fails to state clearly that it was waiving its right to a jury trial.

The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce. Section two of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C. §2]

We have stated that "New Jersey law comports with its federal counterpart in striving to enforce arbitration agreements." Foulke, 421 N.J. Super. at 424.

"An agreement relating to arbitration should thus be read liberally to find arbitrability if reasonably possible." Ibid. (quoting Frumer v. Nat'l Home Ins., 420 N.J. Super. 7 (App. Div. 2011)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Atalese, 219 N.J. at 442 (citation omitted). "This requirement of a 'consensual understanding' about the rights of access to the courts that are waived in the agreement has led our courts to hold that clarity is required." Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C., 416 N.J. Super. 30, 37 (App. Div. 2010) (citation omitted).

"By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [its] claims and defenses litigated in court." Atalese, 219 N.J. at 442 (citation omitted). However, "an average member of the public may not know—without some explanatory comment—that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Ibid.

Here, paragraph fifteen of the agreement expressly instructed the parties to choose between court or arbitration where the claim is less than $10,000, but states that in the event of any controversy or claim in excess of $10,000, as in the case here, the controversy or dispute shall be submitted to and settled by

10

arbitration. Moreover, the section states that the arbitration shall be held in accordance with the then prevailing commercial arbitration rules of the AAA.

Furthermore, paragraph fifteen emphasized that judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction. And, venue for arbitration was the city closest to the city in which the branch office of the company which serves the customer is located.

Unlike the plaintiff in Atalese, neither Foulke nor Domestic PA's representatives were "an average member of the public." Ibid. Kopp was sophisticated enough to serve as Foulke's general manager for three automobile dealerships since 2001. Furthermore, Kopp testified that in 2009, he was personally involved in addressing "consumer complaints that result in litigation," and "had been involved in several arbitrations with dissatisfied customers." He testified on behalf of Foulke in other matters in support of enforcing arbitration clauses, before he executed the agreements at issue in this case.

Moreover, Kopp admitted he read paragraph four of the contracts, which states "[t]he [c]ustomer also warrants that he has read the entire contract, front and back . . . ." We note this was not "a consumer contract of adhesion where [one party] . . . possessed superior bargaining power and was the more

11

sophisticated party in the transaction." Delta Funding Corp. v. Harris, 189 N.J. 28, 40 (2006). Rather, it was a negotiated agreement between sophisticated business entities where the owners' representatives chose arbitration. Additionally, Kopp assented to the terms of the contracts upon the recommendation of Scicili, who negotiated the contracts on behalf of Foulke with Domestic PA.

Nonetheless, Foulke incorrectly claims this case resembles Atalese. In Atalese, a consumer seeking debt relief entered into a contract containing an arbitration provision which "made no mention that plaintiff waived her right to seek relief in court." 219 N.J. at 435, 437. The Court held "[t]he absence of any language in the arbitration provision that plaintiff was waiving her statutory right to seek relief in a court of law renders the provision unenforceable." Id. at 436. Here, the contracts made clear that Foulke was choosing arbitration for claims in excess of $10,000 rather than seeking relief in court.

The Court "emphasize[d] that no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights." Id. at 447. "Whatever words" are chosen, "they must be clear and unambiguous that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law." Ibid. "[T]he parties must know that there is a distinction between resolving a

dispute in arbitration and in a judicial forum." Id. at 445. Here, the contracts informed the parties there was a distinction between resolving certain disputes in arbitration and in court.

"In Atalese, the Court provided several examples of language sufficient to meet these expectations." Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 606 (App. Div. 2015). The Court noted our Griffin decision "upheld an arbitration clause, which expressed that '[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes.'" Atalese, 219 N.J. at 445 (alteration in original) (quoting Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010)). Like the arbitration clause approved in Griffin and Atalese, the arbitration provision here made clear the parties were choosing to use arbitration to solve their disputes in excess of $10,000 rather than a court action.

The Court also cited another example, where the arbitration clause stated, "the plaintiff agreed 'to waive [her] right to a jury trial,'" id. at 444 (alteration in original) (citation omitted), and a third example where the arbitration clause stated: "Instead of suing in court, we each agree to settle disputes . . . only by

13

arbitration," where "[t]here's no judge or jury." Id. at 445 (citation omitted). The Court stated an arbitration "clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447.

Foulke relies on this last phrase and argues that mutual assent requires that the parties have full knowledge of the terms they agreed upon. Here, the arbitration clause amply notifies the parties that their claims are arbitrable if the amount in dispute exceeds $10,000. Moreover, the Court approved both Griffin's reference to the right to bring claims in court and other examples referring to the right to have a jury. Id. at 444-46. The Court stated Griffin and the other examples "show that, without difficulty and in different ways, the point can be made that by choosing arbitration one gives up the 'time-honored right to sue.'" Id. at 445.

Atalese simply requires a contract "to explain in some minimal way that arbitration is a substitute for a consumer's right to pursue relief in a court of law . . . ." Morgan v. Sanford Brown Inst., 225 N.J. 289, 294 (2016). In Morgan, the plaintiffs—students—complained "they did not know that the arbitration provision denied them their right of access to a judicial forum and to a jury trial." Id. at 300-01. The Court noted the provision did not "explain that arbitration is

a substitute for bringing a claim before a court or jury." Id. at 306.  The Court reiterated that "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement" and again cited the arbitration clause in Griffin, which did not mention a jury.  Id. at 309.

Thus, we reject Foulke's claim that the contracts' arbitration clause cannot be enforced because it did not also advise about a right to a jury trial.  Neither Foulke nor Domestic PA claims to be ignorant that waiver of the right to seek relief in court would waive the component right to a jury, and they are not consumers.

We are satisfied that the arbitration provision here dictated it would be conducted under a specified set of rules, namely the AAA, which sophisticated parties, such as Foulke and Domestic PA, could consult if needed.  Foulke argues its sophistication must be construed under Garfinkel v. Morristown Obstetrics Gynecology Assocs., P.A., 168 N.J. 124 (2001).  Foulke's argument is misplaced.  In Garfinkel, the Court ruled a statutory claim was not waived by an arbitration clause because it was "silent in respect of plaintiff's statutory remedies."  168 N.J. at 135.  The Court found the clause's failure to encompass the claim was not offset by plaintiff being a doctor.  "Irrespective of plaintiff's status or the quality of his counsel, the Court must be convinced that he actually

intended to waive his statutory rights. An unambiguous writing is essential to such a determination." Id. at 136.

Here, unlike Garfinkel, the arbitration provision was not inadequate or unconscionable because it clearly informed the parties they waived litigation in court for disputes exceeding $10,000 in favor of arbitration. In determining whether Foulke and Domestic PA understood their choice, it was obviously relevant to the trial judge that they were sophisticated.

Foulke also contends Domestic PA did not give proper notice of its intention to enforce arbitration of all claims because the arbitration clause was hidden and not conspicuous. However, Kopp admitted reading the front page of the contract, which states that he read the entire contract, front and back. Thus, we are unpersuaded by Foulke's argument that there "is no warning on the front of the document" about the arbitration clause printed on the reverse side. The trial judge also found Kopp signed the contracts outside the presence of Domestic PA's representative. Hence, we discern no fraudulent inducement as alleged by Foulke.

Likewise, Foulke's claim that it did not have the opportunity to have counsel review the agreement is entirely without merit. Nothing in the record suggests Foulke or its representatives were under duress to sign the contracts or

were dissuaded from having legal representation prior to executing the contracts. We note that Foulke and its current attorney have repeatedly sought to enforce Foulke's own arbitration agreements over the past decades.[2] Thus, Foulke was no stranger to contracts or arbitration agreements. For these reasons, we affirm the trial judge's decision to compel arbitration.

III.

Next, Foulke argues that the trial judge erred in allowing parol evidence to reform the terms of the contract to apply to Domestic PA. In support of its argument, Foulke asserts the contracts identify defendant as, "Domestic Linen Supply Co., Inc. D/B/A Domestic Uniform Rental" and since Domestic NJ is registered to Domestic Linen Supply Co., Inc. in New Jersey, Domestic NJ must be the proper party to the contracts. We reject Foulke's argument.

The record shows that Domestic PA was registered to conduct business in Pennsylvania under the name, "Domestic Uniform Rental." In its contracts with Foulke, Domestic PA used its properly registered name, "Domestic Linen Supply Co., Inc. D/B/A Domestic Uniform Rental."

---

[2] Corchado v. Foulke Mgmt. Corp., No. 15-6600, 2017 U.S. Dist. LEXIS 21457 (D.N.J. Feb. 14, 2017).

N.J.S.A. 14A:2-2.1 governs alternate names of corporations in New Jersey. The statue provides that, "[a]ny corporation may adopt and use any alternate name, including any which would be unavailable as the name of a domestic or foreign corporation because of the prohibitions of paragraph 14A:2-2(1)(b),… by filing a certificate of registration of a corporate alternate name with the Secretary of State executed on behalf of the corporation." N.J.S.A. 14A:2-2.1(2).

Additionally, the registration of an alternate name does not grant the registrant exclusive rights to use the alternate name, as argued by Foulke:

> (4) Nothing in this section [governing alternate name registrations] shall be construed
>
> (a) To grant to the registrant of an alternate name any right in the name as against any prior or subsequent user of the name, regardless of whether used as a trademark, trade name, business name, or corporate name; or
>
> (b) To interfere with the power of any court to enjoin the use of any such name on the basis of the law of unfair competition or on any other basis except the mere fact of identity or similarity of the alternate name to any other corporate name.
>
> [N.J.S.A. 14A:2-2.1(4)].

We discern nothing untoward about the use of "Domestic Uniform Rental" in New Jersey, and the trial judge correctly concluded that Domestic PA was the proper party to the contracts.

Foulke argues the trial judge erred by going beyond the four corners of the contracts and admitting parol evidence at the hearing relative to the parties' course of conduct after the contracts were executed to reform them to reflect Domestic PA as the proper party. At the hearing, Kopp testified that he intended to contract with a New Jersey company. Messineo, Domestic PA's former employee who signed the contracts on its behalf, testified about the circumstances surrounding the signing of the contracts.

The parol evidence rule is a rule of substantive law and is not a rule of evidence. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268 (2006). "In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Ibid.; see Restatement (Second) of Contracts § 213 (Am. Law Inst. 1981). Our Supreme Court, however, has adopted the "expansive view of the parol evidence rule, which was adopted in the Second Restatement of Contracts," Conway, 187 N.J. at 268-69, that permits

> a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the

contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

[Id. at 270.]

"Where the parties have made [a] writing the sole repository of their bargain, there is the integration which precludes evidence of antecedent understandings and negotiations to vary or contradict the writing. This is in essence the 'parol evidence rule' . . . ." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 303 (1953); see also Filmlife, Inc. v. Mal "Z" Ena, Inc., 251 N.J. Super. 570, 573 (App. Div. 1991).

A determination as to whether a contract is integrated is based upon "the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice." Schwimmer, 12 N.J. at 304 (quoting 9 Wigmore on Evidence, §§ 2413, 2430, 2431 (Chadbourn rev. 1981)). Whether there is an integrated agreement between the parties, however, is an issue the court must decide "preliminary to determination of . . . [the] application of the parol evidence rule." Restatement (Second) of Contracts § 209. Where the court determines there is only partial integration of an agreement in a written contract, a court can properly consider the parol evidence to determine the complete terms

of the agreement.  <u>Zone Co. v. Serv. Transp. Co.</u>, 137 N.J.L. 112, 118-19 (Sup. Ct. 1948); <u>Restatement (Second) of Contracts</u> § 210.

Here, the trial judge did not rely upon parol evidence to alter an integrated document.  <u>See</u> <u>Conway</u>, 187 N.J. at 268.  Instead, the judge relied upon the testimony of the witnesses, Domestic PA's Pennsylvania corporate registration and fictitious name registration, invoices, payments, and other items to identify the party with whom Foulke contracted.  Based upon our review of the record, we are satisfied there was substantial credible evidence supporting the trial judge's conclusion that Domestic PA was the party to the contracts with Foulke.

IV.

Finally, we address Foulke's argument that the trial judge abused his discretion by allowing Messineo and George Chumas, the general manager for Domestic NJ, to testify on thirty-eight hours prior notice to Foulke.  In its brief, Foulke claims it was "surprised" by Domestic PA's failure to name these two witnesses in discovery.

Messineo negotiated and signed the contracts for Domestic PA.  The record shows Foulke knew about Messineo since 2010, but it did not subpoena him.  Foulke's attorney did not depose Chumas, however, he did not have any

A-4725-18T2

factual knowledge concerning the contracts at issue because Domestic Linen NJ was not a party to the contract.

The trial court's decision to hear relevant testimony is entitled to deference, in the interest of its factfinding at the hearing. Haven Sav. Bank v. Zanolini, 416 N.J. Super. 151, 161-62 (App. Div. 2010). We discern no abuse of discretion by the trial judge in permitting Messineo and Chumas to testify. Messineo's signature appears on the agreement with the title of "Regional Sales Manager" printed underneath.

Clearly, Foulke had actual notice of Messineo's identity and role in this matter since the agreement was signed on March 30, 2010. Foulke's claim that it was taken by "surprise" by his testimony is devoid of merit. Chumas had no knowledge of the issues pertinent to the judge's decision. Therefore, we discern no prejudice to Foulke.

Any arguments asserted by Foulke that we have not expressly addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4725-18T2