**J. A. GARCIA, Plaintiff**
**v.**
**FRANK PEREZ, Defendant.**
**J. A. GARCIA, Plaintiff**
**v.**
**ARSENE MASSAC, Defendant**

# Civ. Nos. 141-1947, 142-1947

# District Court of the Virgin Islands

### Div. of St. Thomas and St. John at Charlotte Amalie

# June 1, 1948

JORGE RODRIGUEZ, *for plaintiff*

MOORE, *Judge*

The case of Garcia v. Perez above came on for further hearing on the 18th day of March, 1948, on petition of the defendant to set aside a default judgment entered for certain sums claimed by the plaintiff as holder in due course of certain drafts which were accepted by the defendant, and to permit him to answer the complaint.

In his petition the defendant alleges, in substance: that during the pendency of the action in debt, plaintiff and defendant had a conference, resulting in a gentlemen's

agreement, by virtue of which plaintiff instructed his attorney to stay proceedings until the drawer, one Francisco Bechara, President of the Bechara Soap Manufacturing Company of Puerto Rico, who had negotiated the drafts to plaintiff, had an opportunity to pay the plaintiff in full the amount claimed in the complaint; that the defendant had paid the said Bechara for the merchandise covered by the drafts; that the judgment entered against him, therefore, was a surprise, for the agreement was to the effect that, in the event plaintiff desired to continue the proceedings before he was paid by Bechara, he would give the defendant due notice; that such notice was not given; and that he had a meritorious defense to the action.

At the hearing of this petition, plaintiff admitted that a conference was held, but denied there was any agreement to stay the proceedings for more than eight days. Because of the conflict in the testimony as to what was agreed upon at the conference, the Court allowed the defendant to file his answer, ordered the sale of defendant's property at public auction stayed until further order of the Court, without setting aside the judgment, and set the matter for trial. To all this plaintiff excepted.

After this ruling of the Court, it was stipulated by the attorneys for the parties that the said ruling apply to the case of Garcia v. Massac, the other case above, as the defense in both is identical.

At the trial of the cases on March 30, 1948, which were consolidated by stipulation, amidst conflicting and voluminous testimony, the Court finds the following simple facts:

The defendants, local merchants, received certain merchandise, laundry soap, from one Bechara Soap Manufacturing Company of Puerto Rico. Drafts in favor of the said Bechara Soap Manufacturing Company of Puerto Rico covering this merchandise were accepted by defend-

ants and negotiated by the said Bechara Company to the plaintiff. Some time later there was an agreement between the seller, Bechara, and the purchasers, Perez and Massac, defendants in these cases, by which the merchandise was returned to Bechara or sold by them for his account. The evidence tends to show that Bechara was thereby paid for the merchandise covered by the drafts in plaintiff's possession. The defendants did not recover the drafts from Bechara at the time he was "paid," however, for they were not in his possession, he having theretofore negotiated them to plaintiff on account of certain of his indebtedness to plaintiff. In an effort to obtain the return of the drafts from plaintiff, Bechara executed a mortgage to be delivered to plaintiff as security therefor. Although claimed by the defendants, there is no evidence that the mortgage was ever delivered to or accepted by plaintiff in exchange for the return of the drafts.

In defense, defendants allege that plaintiff is not a bona fide holder of the drafts for value; that the drawer of the drafts, Bechara, was paid by the defendants before maturity and before plaintiff started suit, which payment was made known to plaintiff through the Virgin Islands National Bank, and therefore the defendants do not owe anyone by virtue of the said drafts.

Although not pleaded, another defense urged by the defendants in which the court, over plaintiff's objection, permitted them to present proof, subject to later ruling thereon, was usury. The reason, therefore, was the representation by counsel for the defendants that the law of Puerto Rico, where the transaction between Bechara and plaintiff had taken place, makes all usurious contracts void ab initio; therefore, when plaintiff received the drafts from Bechara in connection with such transactions they were invalid, so he was not a bona fide holder for value.

These cases present no difficulty whatever when stripped of their nonessentials. The one and only question pertinent to a decision is, whether plaintiff is a bona fide purchaser of the drafts for value. Or, as the Uniform Negotiable (Instruments) Act puts it, whether he is a "holder in due course."

If for the sake of argument defendants' positive defenses are admitted as true; that is, payment by them to Bechara; plaintiff's knowledge thereof before starting suit; and usurious contracts between Bechera and plaintiff, they would not be relieved thereby of liability to plaintiff.

In the case of Massac, the drafts were drawn April 16, 1947, and while the date of his acceptance is not shown, they were endorsed by the drawer, Bechara, to plaintiff some time before May 20, 1947, as found by the evidence, for on that date, which was prior to maturity of any of them, they were sent to the New York City Bank in Puerto Rico, and later, to the Virgin Islands National Bank, for collection.

In the case of Perez, the drafts were drawn and accepted on May 24, 1947, and endorsed by the drawer, Bechara, to plaintiff some time before June 5, 1947, as found by the evidence, for on that date, which was also prior to maturity of any of them, they were sent to the New York City Bank, and later, to the Virgin Islands National Bank, for collection. It is admitted that the arrangement of returning the merchandise terminated "on or about July 21, 1947."

It is clear, then, that when Bechara endorsed the drafts to plaintiff and plaintiff accepted them on account of Bechara's pre-existing indebtedness, which indebtedness is shown in an account stated (defendant's Exhibit No. 1), plaintiff became a holder in due course or a bona fide purchaser for value.

■ The Uniform Negotiable Instruments Act (11

V.I.C. § 1 et seq.), which is substantially the law of this jurisdiction, defines a holder in due course as "one who takes the instrument when it is complete and regular upon its face, before it is overdue and without notice that it had been previously dishonored, if such was the fact, in good faith and for value, without notice at the time it is negotiated to him of any infirmity in the instrument or defect in the title of the person negotiating it [1921 Code, Title II, ch. 34 § 52; 11 V.I.C. § 72]." 8 Am. Jur. sec. 354.

■ Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future date. Code of Laws (1921), Title II, chap. 34, (§ 25; 11 V.I.C. § 32), p. 104.

■ If, as the defendants contend, payment was made to Bechara and plaintiff knew of such payment at the time actions were brought by him, that fact would not have changed his rights in the drafts against defendants, or his right to bring suit, as those rights attached at the time the drafts were endorsed to him by Bechara, which was before the said "payment."

■ Notice, to prevent one from taking as a holder in due course, means notice at the time of the taking and not notice arising subsequently. 8 Am. Jur. sec. 385 and cases cited. Nowhere do the defendants claim that at the time Bechara negotiated the drafts to plaintiff that any of them was not complete and regular upon its face; that it was overdue; that the plaintiff had notice it had been previously dishonored; or of any infirmity in the instrument or defect in the title of the person negotiating it.

■ Since defendants admit acceptance of the drafts and the Court is satisfied that plaintiff is a holder in due course, the defendants are clearly liable thereon. The

person primarily liable is the person who is absolutely required to pay, as the maker of a note or the acceptor of a bill. 8 Am. Jur. sec. 526; Cox v. National Bank, 100 U.S. 704, 25 L. Ed. 739; Wallace v. M'Connell, 13 Pet. 136, 10 L. Ed. 95; Kupfer v. Bank of Galena, 85 Am. Dec. 309. A drawee who accepts a bill drawn upon him becomes primarily liable for its payment; the obligations of all other parties are secondary and collateral. Industrial Bank v. Bowes, 56 Am. St. Rep. 228; Kupfer v. Bank of Galena, supra; Diversy v. Moor, 74 Am. Dec. 157; Raborg v. Payton, 2 Wheat. 385, 4 L. Ed. 268; Annotation 1 L.R.A. 649.

■-■ With respect to the proof proffered to show usury, the Court cannot consider it for various reasons. First, not only was the defense not pleaded, but the law of Puerto Rico does not invalidate usurious contracts, as was represented to the court during the trial, even if usury were shown, but merely provides certain penalties and forfeitures. Those penalties and forfeitures are not available in this jurisdiction. "It has long been settled law, that the penal statutes of one state have not the force of law beyond the limits of the state which enacted them." Suffolk Bank v. Kidder, 36 Am. Dec. 354. Second the right to attack a transaction for usury being personal to the borrower or to those in privity with him, the defendants cannot urge usury as a defense, for they are not in these classes. 66 C.J. 315; Stott v. Williams, 62 Am. St. Rep. 340; Drew v. Skeena, 70 A.L.R. 353.

Inasmuch as the Court set aside the judgments upon stipulation at the end of the trial and considered the evidence adduced on both sides as on the merits, it is necessary to enter new judgments in the cases.

For the reasons outlined herein, the Court finds that plaintiff is a holder in due course of the drafts sued on, and as such is entitled to judgment in the amount prayed

for in each case, plus costs and attorney's fees in the amount of $300.00 in the Perez case, and costs and attorney's fees in the amount of $150.00 in the Massac case.

Judgments may be prepared consistent with this opinion.