FIRST NATIONAL CITY BANK, Acting in behalf of and as servicer for FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION, ORLANDO, FLORIDA, Plaintiff

v.

BURTON M. SAKS CONSTRUCTION CORP., BURTON M. SAKS, RUTH SAKS and ESTHER MULLER, Defendants

## Civil No. 75-450

## District Court of the Virgin Islands

Div. of St. Croix

## February 9, 1976

Loud and Campbell, Esqs. (Robert J. Murnan, Esq.), St. Thomas, V.I., *for plaintiff*

Bryant, Costello, Burke and Scott, Esqs. (Roland B. Scott, Jr.), Christiansted, St. Croix, V.I., *for defendants*

Young, *District Judge*

This matter is before the Court on the motion of the plaintiff First National City Bank, acting in behalf of and as servicer for First Federal Savings and Loan Association of Orlando, Florida, to strike the defendants' affirmative defenses and for summary judgment in this action for debt and foreclosure of a mortgage. On October 1, 1970 defendants Burton M. Saks Construction Corp., Burton M. Saks and Ruth Saks executed and delivered to First National City Bank a promissory note in the face amount of $31,700.00, purportedly bearing interest at the annual rate of nine (9%) percent. This note was secured by a first priority real estate mortgage on certain property which was executed by the defendant corporation alone and delivered to the plaintiff on the same date.

On March 25, 1971 the note and mortgage were assigned to the First Federal Savings and Loan Association, Orlando, Florida. First National City Bank entered into a mortgage loan servicing contract with the savings and loan association on March 29, 1971 whereby it agreed to represent the interests of the association in matters pertaining to collection, repayment and foreclosure. Pursuant to that agreement First National City Bank later brought this action for debt and foreclosure alleging that the defendant corporation and Burton and Ruth Saks were in default on the note and the corporation was in default with respect to the terms of the mortgage instrument. A fourth defendant, Esther Muller, was made a party to this action because of a subsequent lien on the property involved.

The defendants then filed an answer in which they included three affirmative defenses. The first, the contention of Burton and Ruth Saks that any indebtedness claimed by the plaintiff as to them is void for lack of consideration, has since been withdrawn and need not be discussed. Secondly, they assert that by virtue of an irrevocable assign-

ment of the mortgage by the plaintiff that plaintiff has no standing to bring this action and that it is an improper party. Finally, the third defense put forward by defendants Burton and Ruth Saks is that as a result of an "origination fee" of $634.00 charged by plaintiff on the loan, the actual interest rate is $9\frac{1}{4}\%$ which is usurious and works a forfeiture of the entire interest on the debt.

## I

■ Initially, I shall turn my attention to the plaintiff's motion to strike the affirmative defenses raised by the defendants. Under Rule 12(f) of the Federal Rules of Civil Procedure the court may, upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by the rules, within 20 days after service of the pleading upon him or upon the court's own initiative at any time, order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The plaintiff's motion to strike the defendants' affirmative defenses is untimely, having been filed nearly six months after the receipt of the defendants' answer, and shall be denied.

## II

■ The defendants second affirmative defense (the first has been withdrawn) is that the plaintiff does not have standing to bring this action. The plaintiff, after assigning this mortgage to the Orlando savings and loan association, entered into a contract with that group whereby plaintiff would continue to represent the interests of that association regarding this mortgage.

Clause 5 of the contract entered into between the plaintiff and the savings and loan association expressly authorizes and requires the plaintiff to institute and conduct a foreclosure proceeding where necessitated by default. Un-

der Rule 17(a) of the Federal Rules of Civil Procedure "a party with whom or in whose name a contract has been made for the benefit of another . . . may sue in his own name without joining with him the party for whose benefit the action is brought". This apparently gives express authorization to the plaintiff to maintain this action in its own name. Moreover, under Rule 17 an action shall not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time is allowed after objection for the real party in interest to ratify or be substituted in the action.

There is no question that the real party in interest, the savings and loan association, intended that the plaintiff institute and conduct any necessary foreclosure proceedings. Thus, the defendants' second affirmative defense does not provide a basis upon which the plaintiff's motion for summary judgment should be denied.

### III

I will now address the plaintiff's motion for summary judgment as to the defendant Burton M. Saks Construction Corp. Under the very familiar Rule 56 standard, summary judgment is appropriate only where the moving party can show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.

■ With respect to the corporation alone, this standard has been met. It is clear from the pleadings, affidavits, and other written submissions that the corporation is in default under the terms of the mortgage and on the payment of the indebtedness. This conclusion is further supported by the candid admission by the defendants' counsel in his memorandum in opposition to these motions that, "Although plaintiff may be entitled to summary judgment against Burton M. Saks Construction Corp. . .".

I do note that the defense of usury was rightly not asserted in behalf of the defendant corporation. The defense of usury is not available to a corporation. See 13 V.I.C. § 347. See also this Court's opinion in First National City Bank v. Robert J. Tierney and Josephine Tierney, Civil No. 1974-302 (filed December 19, 1974). Therefore, the plaintiff's motion for summary judgment shall be granted as against the defendant corporation.

## IV

The difficult and interesting issues in the case sub judice arise in deciding the plaintiff's motion for summary judgment against defendants Burton and Ruth Saks. These individual defendants have raised the defense of usury, alleging that the usurious rate works a forfeiture of the entire interest on the debt. The defendants are correct in their assertion that usury, if proven, does work a forfeiture of the entire interest on the debt. 11 V.I.C. § 954.

There are several basic issues presented by the raising of a usury defense under these circumstances. Among these are:

(1) In what capacity did Burton and Ruth Saks sign the note? Is the defense of usury available to them when it cannot be raised by the corporation? (2) Should the "origination fee" be included when computing the interest rate? If so, is the interest rate usurious? Have the facts relating to the interest rate been specified with enough precision that the Court can make a determination regarding usury at this stage? (3) If a usurious rate of interest was charged by the bank, was it "knowingly done" in violation of Section 86 of the National Banking Act. 12 U.S.C. § 86?

The threshold issue is whether the individual defendants may raise the defense of usury when the codefendant corporation is barred from asserting said defense by statute. The plaintiff argues that regardless of the capacity in

which the Sakses executed the note, because title to the real property was held by a corporation and the loan granted to the corporation, the individual defendants are similarly barred by 13 V.I.C. § 347 from pleading usury as a defense. The plaintiff cites Raby v. Commercial Banking Association, 208 Pa. Super. 52, 220 A.2d 659 (1966) and two more recent New York decisions to the effect that a party signing a note under the circumstances of this case is an accommodation party who has no greater protection than his corporate principal who is precluded by statute from pleading usury as a defense.

The defendants reply that the Sakses signed the note individually as co-makers and that as principal obligors they may raise the defense of usury even though it is not available to the corporation. They cite Grove v. Chicago Title & Trust Co., 25 Ill.App.2d 402, 166 N.E.2d 630 (1960), and distinguish the Raby case as being a situation where the corporation was the sole maker of the note.

Based upon the plethora of decisions discussing the issue of the availability of the usury defense the parties are correct in framing the issue in terms of the capacity in which the individuals signed the note. Essentially, the majority line of cases have allowed individuals signing as co-makers on notes along with a corporate maker to plead the defense of usury, while denying that right to individual endorsers, guarantors, or sureties of a corporate obligation. Rather than strictly adhering to this traditional dichotomy I find it more helpful to analyze the problem by looking at the particular realities of a given transaction and the policies underlying the usury laws.

In any event, since I find that Burton and Ruth Saks signed the note as co-makers, as principal obligors they are entitled to assert the usury defense even under traditional precedent. See Meadow Brook National Bank v. Recile, 302 F.Supp. 62, 78 fn. 9 (E.D. La. 1969), and the

wealth of authority cited therein. Despite the fact that title in the underlying property was vested in the corporation alone, Burton and Ruth Saks each clearly signed the mortgage note in their individual capacities.

■ The Court is assuming, in light of no showing to the contrary and subject to further evidence being provided to rebut this assumption, that we are dealing with a closely held corporation. It may be rather academic to say, as the plaintiff suggests, that this loan and the benefits thereof accrue only to the corporation. In situations involving closely held corporations where banks often insist on dealing with corporate officers in their individual capacities, the banks should not later be able to deny to these individuals defenses that would ordinarily be available to them. A person can as easily suffer personal financial ruin when called upon to pay the usurious loan of a corporation as when called upon to pay his own usurious loan.

The rationale generally advanced for affording a usury defense to individuals who borrow money for themselves, but not to individuals who guarantee borrowings of a corporation is well stated in Ferdon v. Zarriello Bros. Inc., 87 N.J. Super. 124, 208 A.2d 186 (1965).

A rationale that suggests itself is that a guarantor or accommodation maker, as distinguished from the borrower himself, is not in need of protection; he is not likely to be overcome by financial need when assuming an obligation for the accommodation of another without participating in any of the borrowed money; so that if the underlying borrowing is not usurious as to the borrower, such as a corporation, the individual endorser or guarantor cannot claim usury. 208 A.2d 191.

The opinion, however, adds an important postscript in saying, "Of course, the realities may belie the rationale in a given case."

I question the validity of this rationale, especially in the situation where corporate officers of a very closely held corporation are signing the obligation as individuals. To

elaborate on this view I will take the liberty to quote at length from the very thoughtful treatment of the subject given by Judge Heebe in Meadow Brook National Bank v. Recile, supra.

We think that the policy supporting the usury laws is equally applicable in the case of an individual endorser on a corporate note as in the case of an individual maker. The above justification for denying the defense of usury to individual endorsers on a corporate note assumes that the usury laws exist to protect only the unsophisticated or defenseless borrower. We do not agree. The usury laws apply to all individuals, regardless of their sophistication or circumstances. Certainly, then, the basic legal policy underlying the usury laws is to prevent the *personal financial ruin* of individuals through excessive rates of interest. This policy is equally frustrated when an individual is called upon to pay his own usurious loan as when he is called upon to pay the usurious loan of a corporation. . . . Moreover, we do not think the rule furthers the legal policy underlying the disallowance of usury as a defense to corporations. . . . Essentially, the defense of usury is barred to corporations because the danger of personal financial ruin is nonexistent. Yet a very real danger of personal financial ruin does exist as to the individual endorsers of the corporate obligation. To permit such endorsers to plead usury as a defense does no violence to the legal policy prohibiting corporations from asserting the defense, and to deny the defense to individual endorsers truly frustrates the legal policy supporting the usury laws. 302 F.Supp. at 79.

Thus, by way of dictum I would conclude that even if the plaintiff was obtaining the signatures of Burton and Ruth Saks merely as accommodation parties on the corporate obligation, under these circumstances I would permit the Sakses to raise the defense of usury. Having said this, I do not believe that the action as to defendants Burton M. and Ruth Saks is appropriate for disposal by summary judgment.

■ Firstly, based on the information before it the Court does not believe that it can now make a final determination as to whether a usurious interest rate was in fact charged. The courts have required that the facts constitut-

ing usury be specified with great certainty and precision. See, e.g., Elrod v. Trussel, 96 So.2d 813 (Ala. 1957). I do not believe that a full scale trial will be necessary on this issue but the parties will have to supply additional information explaining exactly what the "origination fee" was and demanding how this makes the rate of interest usurious.

Additionally, in accordance with this Court's opinion in First National City Bank v. Robert J. Tierney and Josephine Tierney, supra, while plaintiff is restricted by the legal interest rate established in this territory, the defendants must ground their defense in Section 86 of the National Banking Act, so they also must prove that the charging of usurious interest, if any, was "knowingly done". In the Tierney case I held that summary judgment was normally an inappropriate means of resolving this state of mind issue. That holding is controlling under the circumstances before us now. Perhaps the granting of summary judgment against the corporation will resolve the issues which gave rise to this lawsuit. If the plaintiff seeks additional relief against the Sakses in their individual capacities the Court must be given further information.

■ Finally, I should mention that defendant Esther Muller was made a party to this action because of a subsequent lien which she allegedly holds on the property. Nothing has been offered to dispute the obvious fact that First Federal Savings and Loan Association has the senior lien on this property. In granting summary judgment against the defendant corporation I do not mean to jeopardize any lien which defendant Muller might hold except to find it inferior to the lien of the savings and loan association.

### ORDER

In accordance with the Memorandum Opinion of even

date herewith to which this Order is attached, and for the reasons set forth therein, it is hereby ORDERED

1. That plaintiff's Motion to Strike the Affirmative Defenses of the defendant be and the same is hereby DENIED;

2. That plaintiff's Motion for Summary Judgment as to defendants Burton M. and Ruth Saks be and the same is hereby DENIED; and

3. That plaintiff's Motion for Summary Judgment as to defendant Burton M. Saks Construction Corp. be and the same is hereby GRANTED.

Attorneys for the plaintiff shall prepare a draft of a proposed Judgment and Order of Foreclosure in accordance with this Order with interest and costs computed up to the date of this Order.