**DANIEL W. ZUGELTER AND ANN C. ZUGELTER, Plaintiffs**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS
ASSOCIATION, Defendant**

Civil No. 1981/274

District Court of the Virgin Islands

Div. of St. Croix

June 2, 1983

JOHN B. NICHOLS, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

JEAN-ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion of defendant Bank of America Trust and Savings Association for summary judgment in the above captioned action for damages. For the reasons set forth herein, we grant defendant's motion and dismiss both causes of action in this matter.

## FACTS

In October of 1979, co-plaintiff Daniel W. Zugelter (hereinafter "Zugelter" or "plaintiff") entered negotiations with defendant Bank of America Trust and Savings Association (hereinafter "the bank" or "Bank of America") in an attempt to secure a loan. Zugelter sought to borrow $100,000 for investment purposes, in order to construct and sell a house in Estate Judith's Fancy, St. Croix. Plaintiff initially filed a loan application with the bank in his own name, but no loan precipitated. On November 21, 1979, Zugelter filed Articles of Incorporation with the Office of the Lieutenant Governor forming a closely held corporation known as Associated Service Supply of St. Croix, Inc. (hereinafter "the corporation" or "Associated Service"). The Articles of Incorporation, drafted by Zugelter himself, listed Zugelter as President; co-plaintiff and wife, Mrs. Ann C. Zugelter, as Secretary-Treasurer; and, their son, Theodore Zugelter as vice president. Two days later Bank of America finalized a loan of $100,000 to Associated Service, the promissory note being signed by Zugelter and his wife in their capacities as corporate officers. The note was in the face value of $100,000, bearing interest at the annual rate of 17%. The loan was made pursuant to a "Corporate Resolution to Borrow" prepared for Zugelter by the bank. This resolution was also signed by plaintiffs in their official corporate capacities. The Zugelters, this time as individuals and not as representatives of Associated Service, then executed a continuing personal guarantee of the full $100,000 loan amount. The loan was secured by a second mortgage on other real property owned by plaintiffs in St. Croix.

The house was completed around December of 1980, but due to a depressed housing market, Zugelter was unable to sell it until approximately 13 months thereafter, in November of 1981.

In October of 1980, Zugelter began discussing with Bank of America the possibility of converting the loan into a conventional mortgage. The bank, in turn, began discussing with Zugelter the possibility of their leasing the Judith's Fancy house. In December of 1980, the bank began leasing the house from Zugelter. The parties discussed an annual percentage rate of 13% for the conventional mortgage, but when the instrument was finally executed in June, 1981, the annual percentage rate was set at 16.25%.

Plaintiffs now seek relief on two separate grounds. Plaintiffs assert initially that the loan was not made to Associated Service but to them as individuals, and is thus usurious in violation of 11 V.I.C. §

952.[1] Plaintiff incorporated only after he was told by the bank that incorporation was a precondition necessary for the granting of the loan. Pursuant to 11 V.I.C. § 953,[2] plaintiffs now seek to recover twice the amount of the interest paid the original loan agreement.

Plaintiffs also contend that the bank orally committed to charging Zugelter an annual interest rate of 13% on the conventional mortgage. Zugelter calculated the rent to be charged the bank on that figure and signed the lease. When the conventional mortgage agreement was executed several months later, the actual annual percentage rate was 16.25%. Plaintiffs seek judgment in the difference in the amount between the interest actually paid at 16.25% and the interest promised them at 13.00%.

## DISCUSSION

█ Fed. R. Civ. P. 56(c) allows that summary judgment may only be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Summary judgment is thus classified a "drastic remedy" and it is clear "that courts resolve any doubts as to the existence of genuine issues of fact against the moving parties." Hollinger v. Wagner Mining Equipment Co., 667 F.2d 402, 405 (3d Cir. 1981); Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).

█ All "inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." Hollinger v. Wagner Mining Equipment Co., 667 F.2d at 405; Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). "Any reasonable inferences from the facts must be resolved in the favor of the parties against whom the judgment is entered." Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners, 676 F.2d 81, at

---

[1] 11 V.I.C. § 952 states:

> No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, chattels, lands and tenements, than prescribed in this chapter.

[2] 11 V.I.C. § 953 states:

> If usurious interest, as defined by sections 951 and 952 of this title, shall be received or collected, the person or persons paying the same, or their legal representatives, may by an action brought within two years after such payment, receive from the person, firm or corporation, having received the same, double the amount of the interest so received or collected.

84 (3d Cir. 1982); Betz Laboratories, Inc. v. Hines, 647 F.2d 402, 404 (3d Cir. 1981).

## I. Is the Loan Usurious?

Applying these principles, while withholding actual judgment, we view the facts as if 1) Zugelter did incorporate Associated Service at the behest of the bank 2) after his being told by the bank that incorporation was a condition precedent to his getting a loan and 3) the bank requested incorporation for the sole reason that it could then legally charge a higher rate of interest. The initial question presented, is whether a bank may require a prospective borrower a higher rate of interest than could be charged an individual.

■ ■ Usury is the extraction of a greater sum for the use of money than the highest rate of interest allowed by law. Evans v. National Bank, 251 U.S. 108 (1919).

> The basic legal policy underlying the usury statutes is "to prevent the personal financial ruin of individuals' from the unconscionable tactics of unscrupulous lenders who seek to derive monetary gain from the financial distress of others.

First Pennsylvania Bank, N.A. v. J.H.K. Enterprises, Inc., Joseph H. Kline, Jr., and Ethel L. Kline, 1976 St. C. Supp. 335 (May 12, 1976, Young, J.).

■ Under Virgin Islands' law usury cannot be raised as a defense by a corporation. 13 V.I.C. § 347 states:

> No corporation shall plead any law against usury in any court as a defense in any action instituted to enforce the payment of any bond, note or other evidence of indebtedness issued or assumed by it.

■ Further, the Zugelters, as individual guarantors on the corporation's promissory note, are also precluded from interposing usury. Virgin Islands Nat'l Bank v. Eastern Caribbean Corp., 1975 St. T. and St. J. Supp. 324, (December 18, 1975, Christian, J.); But cf. First Nat'l City Bank v. Saks Construction Corp., 70 F.R.D. 417 (D.V.I. 1976) (co-maker of corporate promissory note may assert usury defense). It was thus perfectly legal for Bank of America to charge 17% interest to Associated Service.

The policy behind usury statutes could be easily thwarted, however, if a shell corporation could be formed to secure a loan for what are actually personal obligations of the individual borrower. See, id.; Schneider v. Phelps, 359 N.E.2d 1361 (N.Y. 1977). The necessitous

borrower with no real negotiating power would still be placed at the mercy of the unscrupulous lender.

■ This is not so with respect to a corporation. "[W]ith the 'limited liability' factor of the corporate mode of organization [the risk of] personal financial ruin is practically nonexistent." First Pennsylvania Bank, supra, at 338. We, thus, see "no difficulty sanctioning the use of a shell corporation to avoid the usury laws provided that the true borrower has a business purpose and the corporation itself is a financing device in furtherance of the profit oriented enterprise." Schneider, supra, at 1365.

> The mere fact that the corporation was formed in order to obtain the loan . . . does not render the transaction void or illegal. While it is true that the corporate entity may be disregarded where it is used as a cloak or cover for fraud or some other transaction tainted with illegality, such is not the situation in this instance. [T]he corporation has been created because the statute permits the corporate entity to make the contract which would be illegal if made by an individual. "The law has not been evaded, but has been followed meticulously in order to accomplish a result which all parties desire and which the law does not forbid." (Citations omitted.)

Skeen v. Glenn Justice Mortgage Co., 526 S.W.2d 252, at 256 (Tex. Civ. App. 1975).

The way to analyze these transactions is by looking at "the particular realities of a given transaction and the policies underlying the usury laws." Saks, supra, at 420. The touchstone is the purpose of the loan. If a borrower incorporates to get funds which are to be used to further a "business purpose", he will not thereafter be able to avail himself of the usury defense.

■ Assuming plaintiff's allegations to be true we see no evidence that the loan in question was made for any but a business purpose. There is no evidence of fraud or overreaching on the bank's part. Zugelter admits he knew he was forming Associated Service to allow the bank to legally charge a higher rate of interest on the loan. Zugelter used Associated Service as a "financing device" to receive a loan he would not have otherwise received. Associated Service was not a shell corporation set up to disguise personal loans and avoid usury limits, but on the contrary, accomplished the very task Zugelter hoped it would . . . it enabled him to receive $100,000 with which to start his business.

■ We hold today that persons who form a shell corporation in order to receive a loan for a "business purpose"—that of making a profit—cannot later assert the usury defense for themselves or the corporation.

## II. Interest Rate of Mortgage?

Plaintiff's second contention need be mentioned but briefly. Zugelter asserts that on October 6, 1980, while negotiating converting the loan to a conventional mortgage, the bank orally committed to giving him an annual interest rate of 13%. The mortgage eventually executed was made at an annual rate of 16.25%, however, and Zugelter seeks the difference.

Plaintiff admits the bank never committed to him in writing. Plaintiff, again, alleges no fraud or overreaching, and admits the bank told him several months prior to execution of the mortgage that interest rates were rising. Plaintiff further remembers discussions where the bank informed him they could not commit to a particular interest rate until they knew when the closing was to take place.

■ ■ The Virgin Islands' law applicable to this claim may be simply put. The parol evidence rule, or the rule of integrated contracts, states that "the parties are conclusively presumed to have incorporated their entire agreement in the written instrument which they have signed . . . the contractual terms of which cannot be varied by evidence of prior oral understandings of a different character." Richards v. Boyd, 344 F.2d 754, 756 (3d Cir. 1965). See United States v. Clementon Sewerage Authority, 365 F.2d 609 (3d Cir. 1966). Thus, the only competent evidence before us to establish the interest rate of the mortgage is that figure found in the mortgage document itself. See, Richards, supra. This 16.25% figure is not subject to modification by parol evidence.

Consequently, summary judgment will be granted with regard to this cause of action as well.