**Daniel W. ZUGELTER and Ann C. Zugelter, Appellants**

v.

**BANK OF AMERICA NATIONAL TRUST FUND AND SAVINGS ASSOCIATION.**

No. 83–3304.

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1983.

Decided March 1, 1984.

John B. Nichols (argued), Nichols & Newman, Christiansted, St. Croix, V.I., for appellants.

Jean-Robert Alfred (argued), Douglas A. Brady, Alfred & Brady, Christiansted, St. Croix, V.I., for appellee.

Before HUNTER, WEIS, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Daniel and Ann Zugelter brought this action in the District Court for the Virgin Islands against the Bank of America (the Bank) claiming that the Bank charged them a usurious rate of interest for a building loan. They also request that the court reset the interest rate on a later mortgage between the parties to reflect their understanding that the interest rate would be based on the rental payments on the lease of the mortgaged premises by the Bank. The court granted the Bank's motion for summary judgment. The Zugelters appeal and we affirm.

### I.

Daniel and Ann Zugelter decided to construct a house for speculation purposes on land they owned in St. Croix, Virgin Islands. The Zugelters intended to sell the house for a profit upon its completion. On October 31, 1979, Daniel Zugelter applied to the Bank of America for a loan to build the house. The Bank refused to approve Zugelter's loan. According to Zugelter,[1] a bank officer informed him that the Bank was unwilling to make the loan at the interest rate ceiling permitted by law for loans to individuals. The bank officer suggested that Zugelter form a corporation for the purpose of obtaining the loan. Loans to corporations are not covered by the Virgin Islands usury laws. *See* V.I.Code Ann. tit. 13, § 347 (1982).

Without consulting an attorney, Zugelter drafted and filed an application in the Virgin Islands for Articles of Incorporation for an enterprise to be known as the Associated Service Supply of St. Croix, Inc. Zugelter and his wife owned all of its capital stock and they together with their son constituted all of its officers. The corporation adopted a resolution authorizing an application to the Bank for a $100,000 construction loan. The Bank approved a $100,000 credit line for the corporation, and Zugelter signed a corporate note for that sum. The Zugelters personally guaranteed the corporate loan and the Bank made the loan on the basis of their personal holdings. The Bank charged 17% interest, an amount in excess of that permitted on personal loans. The disbursement of the loan was inept. The money was disbursed through Zugelter's individual account on which he wrote checks to cover both personal and business expenses. The loan enabled the Zugelters to build the house.

Unfavorable market conditions discouraged the Zugelters from selling the house. The Bank thereupon expressed an inclination to lease it. The parties entered into a lease with rent payments based on a proposed mortgage with a 13% interest rate. Six months later, they converted the original loan into a conventional mortgage at 16.25% interest.

### II.

The questions in this case involve Virgin Islands law. The Zugelters maintain that the Bank charged a usurious rate of interest on the loan. They appear to concede that the loan was in form made to a corporation, but contend that the transaction was a sham structured by the Bank to evade the usury laws. At the time of the loan, the maximum legal rate of interest was 13%. V.I.Code Ann. tit. 11, § 951 (1982). The interest rate on the loan exceeded the legal limit on personal loans. If usurious interest is charged, a borrower may bring an action to collect double the amount of interest collected. V.I.Code Ann. tit. 11, § 953 (1982). Under Virgin Islands law, however, usury may not be raised as a defense by a corporation. V.I.Code Ann. tit. 13, § 347 (1982).

The Zugelters argue that a lender should not be permitted to circumvent the usury laws by inducing a borrower to incorporate. The Bank contends that the court's finding that "persons who form a shell corporation

---

1. On appeal from the court's order granting summary judgment for the defendants, the evidence must be viewed in the light most favor-able to the plaintiffs. *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002, 1005 (3d Cir.1983).

in order to receive a loan for a 'business purpose'—that of making a profit—can not later assert the usury defense for themselves or the corporation" should be affirmed.

State law is divided on this question. The court adopted the majority, "New York," rule. Under this rule, parties may use a "shell corporation to avoid the usury laws provided that the true borrower has a business purpose and the corporation itself is a financing device in furtherance of the profit-oriented enterprise . . . ." *Schneider v. Phelps,* 41 N.Y.2d 238, 243, 391 N.Y.S.2d 568, 571, 359 N.E.2d 1361, 1365 (1977). The minority view is that the use of a corporate shell to "cloak" a loan that is actually made to an individual borrower will not allow the lender to avoid the usury laws. *See Monmouth Capital Corp. v. Holmdel Village Shops, Inc.* 92 N.J.Super. 480, 486–87, 224 A.2d 35, 39 (1966). The "great weight of authority," however, "does not allow the assertion of a corporate usury defense in loans to dummy corporations formed to charge a higher rate of interest than could be charged an individual when the loan is made for a business purpose." *Matter of LeBlanc,* 622 F.2d 872, 878 (5th Cir.1980).

██ The district court decided that, as a matter of Virgin Islands law, the majority rule applied. The Zugelters were aware of the business risk that they were taking by incorporating and electing to accept the high interest rate loan in the hope of making a profit. We do not ignore the laudable purposes served by the usury laws, but a narrow and constricted interpretation of the corporate exception to the usury defense may stifle commercial and industrial construction, especially during inflationary periods. We believe that the purposes of the usury laws are not frustrated by excepting loans made to corporations for business purposes.

### III.

In December 1980, the Zugelters entered into an agreement to lease the house to the Bank at a rent allegedly based on a proposed mortgage with a 13% interest rate. Six months later, the parties converted the construction loan into a conventional mortgage, but at 16.25%. The Zugelters argue that they initially agreed to the lease terms with the specific understanding that the rental payments would correspond to the interest charged on the mortgage. They proposed to introduce evidence of this prior oral understanding in support of their case, contending that the Restatement (Second) of Contracts § 214 (1981), which provides for an exception to the parol evidence rule, is controlling. It provides: "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish . . . [a] ground for granting or denying rescission, reformation, specific performance, or other remedy." *Id.*

The district court ruled that the parol evidence rule barred the Zugelters from introducing evidence of a prior oral agreement to set the mortgage at a rate of interest based on the rental payments under the lease. This court found in *Richards v. Boyd,* 344 F.2d 754 (3d Cir.1965), a case arising under Virgin Islands law, that "the parties are conclusively presumed to have incorporated their entire agreement in the written instrument which they have signed, . . . the contractual terms of which may not be varied by evidence of prior oral understandings of a different character." *Id.* at 756.

██ Under the Restatement (Second) of Contracts § 213(1) (1981), "[a] binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them." Evidence of prior agreements are admissible to interpret ambiguities in a subsequent contract. *See* Restatement § 214(c). The Zugelters do not, however, allege an ambiguity or contend that they signed the mortgage under fraud or duress. Their argument is that they leased the house with the understanding that the mortgage rate would be at 13%. Several months later, however, they signed a mortgage at 16.25%. Under the Restatement

§ 213, the written agreement governs the terms of their contract.

The Zugelters do not have a ground to reform the mortgage. They may have an argument that the tender of a mortgage of 13% was a condition of the lease agreement. As such, they might have a claim to reform or rescind the lease. The Zugelters did not, however, raise this claim in their complaint.

### IV.

In conclusion, we adopt the majority rule and hold that a corporate borrower of monies for a business loan in the Virgin Islands may not invoke the usury laws, even if the corporation was formed solely to obtain the loan at the request of the lender. We also conclude that the court properly excluded evidence of an oral agreement to set the rate of the conventional mortgage based on the rental payments under the lease when the alleged oral agreement was made prior to the written mortgage.

The judgment of the district court will be affirmed.