**MICHAEL and NORMA GILLIVAN, Plaintiffs**

v.

**CUTHER H. & HILDA J. AUSTIN, Defendants**

Civil No. 1985/136

District Court of the Virgin Islands

Div. of St. Croix

August 21, 1986

JOHN R. COON, ESQ., St. Croix, V.I., *for plaintiffs*

KENNETH R. LINDQUIST, St. Croix, V.I., *for defendants*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This case mandates a most inequitable result: is an individual lender who innocently asks for more interest than the maximum legal rate fully subject to the quasi-criminal penalties for usury? With reluctance, we must answer affirmatively.

# I. FACTS

Michael S. Gillivan ("Gillivan") is a self-employed builder and repairer of boats and motors, who also makes native crafts for sale in a small store in downtown Christiansted, managed by his wife Norma Gillivan. He has a high school education. He met defendant Cuther H. Austin ("Austin") in 1977 and arranged to lease Austin's property at Plot No. 39 Estate La Grande Princesse for a year, starting in 1978. The property is a quarter-acre lot with a small residence on it. The monthly rent was $300. A short written lease was prepared and signed by the parties, although it is unclear who prepared the document.

The Gillivans, as early as 1978, had expressed an interest in owning the property. Austin had owned it since 1965 and had relocated to the mainland. He agreed to sell it for $30,000, but wanted cash. The Gillivans could not raise the cash.

They talked again about the sale in March 1980. Gillivan and his wife had remained as tenants beyond the lease term at the same monthly rent. The Austins agreed to sell at a price of $32,500 with $15,000 down. The balance of $17,500 was to be financed at an interest rate of 16% on the basis of a monthly payment of $300 until all interest and principal was paid. Austin had arrived at the 16% interest rate because he thought it was the "going rate" for money loaned, having heard people talking at the place where he worked.

Austin, at the time of trial, was 65 years old. He is a plumber by trade and has a ninth grade education. He testified that until he was actually sued by the Gillivans he had never heard of "usury", and he did not retain an attorney until November 1982.[1]

Gillivan also testified that he had no idea what the maximum legal rate was when he agreed to the 16% rate. He testified that his attorney, who drafted all the documents, never told him that 16% was a usurious rate. He only learned that he was paying usurious interest some time after the documents had been signed.

---

[1] The La Grande Princesse property was owned jointly by Austin and his wife, Hilda, and both are named defendants in this action. Austin informed the Court at trial that his wife had died. No motion was made to conform the pleadings accordingly "but the failure to so amend does not affect the result of the trial of th[is issue]." Fed. R. Civ. P. 15(b). The judgment herein applies solely to Cuther Austin.

There was a delay from August 1980, when the Gillivans began making the $300 per month payments toward the purchase of the property, until November 12, 1982, when the actual land contract was signed. In the meantime, the Austins corresponded frequently with the Gillivans and their attorney regarding the 16% interest rate and other matters, but kept rejecting the documents sent to them on the mainland for signature.

The Austins did not want to pass title until they received all of their money. The Gillivans' attorney, believing the agreement to involve a warranty deed with a mortgage for the $17,500, kept sending such documents to Austin. Meanwhile, the Gillivans continued to make the $300 payments.

Finally, a land contract was sent to the Austins for their approval, on the threat of a lawsuit for specific performance if they did not take steps to finalize the oral agreement struck in August 1980 and confirmed by both parties through correspondence. When the Austins did not promptly sign and return the land contract, the Gillivans sued them in territorial court for specific performance. The Gillivans alleged in that lawsuit that the agreement was made in August 1980, effective with their payment on August 15, 1980, of $300.

Austin came to St. Croix in November 1982 with the land contract signed, both by his wife and himself, and duly notarized by a Maryland notary public. He attended the closing at the office of the Gillivans' attorney. There is some confusion as to whether he was represented by counsel at that closing. He did retain an attorney on St. Croix, but indicated that it was only for purposes of seeing to it that his daughter would receive the payments if he and his wife died.

In any event, a land contract was executed and provided for a $15,000 down payment, interest on the down payment from August 1980 to 1982 in the amount of $3,000 calculated at 10%, and the financing of the $17,500 balance at 16% dating back to the August 15, 1980, payment. The Gillivans' attorney testified that the contract entered into on November 12, 1982, was considered to be retroactive to August 15, 1980.

In May 1985, the Gillivans discovered that the 16% interest rate was usurious. They stopped making payments to Austin, and brought this action under the Virgin Islands usury statute, 11 V.I.C. § 951 et seq. They continued making the $300 payments to an escrow account controlled by their attorney.

352

There is presently $4,200 in escrow, representing 14 monthly payments of $300 since May 20, 1985.

At the trial, Gillivan established that he had made $300 payments every month from August 15, 1980, until May 1985. Of the total of those payments, $12,050.53 was for interest. Under the provisions of 11 V.I.C. §§ 953-954, the Gillivans seek a recovery of double the interest already paid, or $24,197.06, plus a forfeiture of all future interest.

The Austins counterclaimed, alleging that the Gillivans were in material default of a wholly valid land contract, thus entitling the Austins to the balance of the contract price or immediate possession of the property. Alternatively, the Austins contended that the Gillivans substituted a usurious interest rate into the contract after the closing and a punitive award of $50,000 is demanded.

The Austins abandoned their latter claim at trial and conceded through counsel that the 16% rate exceeded the maximum legal interest rate. The parties stipulated that the maximum legal rate was 14%.

## II. DISCUSSION

Usury is "the extraction of a greater sum for the use of money than the highest rate of interest allowed by law." Zugelter v. Bank of America, 19 V.I. 561, 565 (D.V.I. 1983) (citing Evans v. Nat'l Bank, 251 U.S. 108 (1919)) aff'd 728 F.2d 218 (3d Cir. 1984). Virtually all American jurisdictions have enacted usury statutes "to prevent the personal financial ruin of individuals from the unconscionable tactics of unscrupulous lenders who seek to derive monetary gain from the financial distress of others." Zugelter, supra at 565. (Citation omitted.)[2] See also Beneficial Finance Co. v. Administrator of Loan Laws, 272 A.2d 649, 651 (Md. 1971). It is prohibited in the Virgin Islands by 11 V.I.C. § 952, which provides:

---

[2] Usury has been illegal since time immemorial. "At an early period in the history of English jurisprudence, usury . . . was deemed a very high offense. But since the days of Henry VIII, the taking of interest has been sanctioned by statute. . . . The act of usury has long since lost that deep moral stain which was formerly attached to it; and it is now generally considered only as an illegal or immoral act, because it is prohibited by law." Lloyd v. Scott, 29 U.S. 205, 7 L.Ed. 833, 839 (1830).

*Usury*

No person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money, or upon contract founded upon any bargain, sale or loan of wares, merchandise, goods, chattels, lands and tenements, than prescribed in this chapter.[3]

■■ The public policy underlying § 952 is given bite by the sanctions for usury: the borrower receives twice the amount of the interest already paid and all future interest is forfeited. 11 V.I.C. §§ 953-954. These penalties make clear that the goal of the usury law is to punish the lender. Consequently, usury has historically been viewed as a quasi-criminal offense. Therefore, the statutes prohibiting it must be strictly construed in favor of the creditor. E.g., Allied Chemical Corp. v. Mackay, 695 F.2d 854, 857 (5th Cir. 1983).

Having established these black letter points, we now determine whether the Austins committed usury.

■ Usury is comprised of three universal elements. There must be: 1) a loan of money 2) that must be repaid 3) at an interest rate exceeding the statutory maximum. E.g., Jaeger, 14 Williston on Contracts (3d ed.) § 1684 (1972); Lloyd, supra at 839. These requirements are clearly met here because the land contract obligates the Gillivans to pay the Austins interest that exceeds the allowable rate by two percent.

■ The burden of proving the additional element of intent is frequently imposed on the borrower by statute, e.g., Freitas v. Geddes Savings and Loan Association, 471 N.E.2d 437, 443 (N.Y. 1984), or case law, e.g., Scott, supra at 222. No such requirement, however, exists in the Virgin Islands. Barclays Bank v. Creque, 13 V.I. 163, 167 (D.V.I. 1976).

---

[3] The maximum legal rate is prime rate plus two percent. 11 V.I.C. § 951 (1986 Supp.).

■■ In Barclays Bank, Chief Judge Christian reluctantly held that the Virgin Islands Code defines usury as a strict liability offense. Thus, even the most innocent of lenders is guilty of usury if the loan agreement calls for excessive interest.[4]

We are constrained to agree with this result because the territory's usury statutes are devoid of an intent requirement. These laws, moreover, are consistent with substantial authority.

The prevailing view holds that a lender who demands excessive interest commits usury regardless of whether he or she knows the rate is illegal. The rationale in some jurisdictions is that intent is irrelevant because usury is a strict liability offense. E.g., In re Schwartz, 37 B.R. 776, 778-79 (Bkrtcy. D.R.I. 1984); Pease v. Taylor, 496 P.2d 757, 763 (Nev. 1972); Beneficial Finance, supra at 651.

Other states purportedly include intent as an element of usury but hold that this requirement is satisfied upon a showing that the lender merely intended to charge the interest rate that proved to be usurious. E.g., Kissell Co. v. Gressley, 591 F.2d 47, 53 (9th Cir. 1979) (applying Arizona law); Dennis v. Bradbury, 236 F. Supp. 683, 687 (D. Colo. 1964); Liebergesell v. Evan, 613 P.2d 1170, 1174 (Wash. 1980) (en banc); Dang v. F and S Land Development Corp., 618 P.2d 276, 282 (Hawaii 1980); Bunn v. Weyerhaeuser Co., 598 S.W.2d 54, 56 (Ark. 1980); Cochran v. American Savings & Loan Association of Houston, 586 S.W.2d 849, 850 (Tex. 1979); Montana National Bank of Bozeman v. Kalokotrones, 535 P.2d 1017, 1021 (Mont. 1975); Hays v. Hudgon, 514 P.2d 31, 32 (N.M. 1973); State ex rel. Turner v. Younker Brothers, Inc., 210 N.W.2d 550, 564 (Iowa 1973).

Still other jurisdictions hold that a specific intent to commit usury is implied where the contract is usurious on its face. Massie v. Rubin, 270 F.2d 60, 63 n.3 (10th Cir. 1959) (applying Oklahoma law); Freitas, supra at 443; McCrory v. Young, 282 S.E.2d 163, 165 (Ga. Ct. App. 1981).

---

[4] Barclays Bank examined 11 V.I.C. § 954, the interest forfeiture provision. That statute contains the word "design" but § 954's punctuation limits its application to the charging of usurious interest in the form of a collateral payment, such as a gift. Judge Christian correctly observed that "[a] tortuous reading of the statute would be required to couple 'design' with the first portion of the sentence dealing with loan contracts." 13 V.I. at 167.

These jurisdictions uniformly reject the contention that ignorance of the legal interest rate is a defense to usury. E.g., Scott, supra at 839; Younker Brothers, supra at 564. A miscalculation or other mistake of fact, however, is generally a defense in all but the strict liability jurisdictions. E.g., Freitas, supra at 443; Bunn, supra at 57; Cochran, supra at 850. Accord Schwartz, supra at 778-79; Beneficial Finance, supra at 651.

By contrast, only a handful of states require the borrower to establish a knowing and corrupt intent on the lender's part as a prima facie element of usury. E.g., North American Mortgage Investors v. Cape San Blas Joint Venture, 378 So. 2d 287, 290 (Fla. 1979); Burr v. Capital Reserve Corp., 458 P.2d 185, 189 (Cal. 1969) (in bank); Washington Federal Savings & Loan Association of Stillwater v. Baker, 374 N.W.2d 786, 788 (Minn. Ct. App. 1985); Lockhart Co. v. Naef, 693 P.2d 1090, 1091 (Idaho 1984); Indian Springs State Bank v. Kelley's Auto Supply, Inc., 675 P.2d 379, 382 (Kan. 1984); Saskill v. 4-B Acceptance, 453 N.E.2d 761, 765 (Ill. Ct. App. 1983).

██ ██ In the face of the unambiguous Virgin Islands statutes and the solid consensus of other jurisdictions, we hold that the land purchase contract was usurious and the Austins are, consequently, subject to the full force of the usury sanctions. We have no doubt that the Austins had the purest of intentions in requesting 16% interest but we are without discretion to re-define the strict liability nature of the usury offense.[5] This finding, of course, renders the remaining count of their counterclaim meritless.

---

[5] Austin neglected to assert the defense of estoppel and, despite the harsh result in this case, we cannot raise it sua sponte. See Fed. R. Civ. P. 12(b). There are two bases for this defense, the first of which is the failure of the Gillivans' attorney, who drafted the loan contract, to object to the illegal interest rate. The Austins were not represented by counsel and it could, therefore, be argued that they relied on the Gillivans' lawyer to cure the deal of legal infirmities. Similar omissions have been held to estop borrowers from asserting usury. E.g., Liebergesell, supra at 1174-76; Holt v. Richett, 238 S.E.2d 706, 709 (Ga. Ct. App. 1977); Lakeview Meadows Ranch v. Bintliff, 111 Cal. Rept. 414, 418 (Cal. Ct. App. 1973). But see contra Shook v. Republic National Bank of Dallas, 627 S.W.2d 741, 751-52 (Tex. Ct. App. 1982) rev'd on other grounds, 653 S.W.2d 278 (Tex. 1983). Moreover, the Austins executed this contract only after the Gillivans sued them for specific performance. It then appears that the usurious contract was the result of a settlement of that first lawsuit.

## III. CONCLUSION

Usury is a strict liability offense in the Virgin Islands. Consequently, judgment will be entered in favor of the Gillivans in the amount of $24,197.06, constituting double the interest already paid, as required by 11 V.I.C. § 953. Additionally, all future interest is forfeited. 11 V.I. § 954.

## JUDGMENT

The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

THAT judgment of $24,197.06 be, and the same is hereby entered in favor of the plaintiffs, and further

THAT all future interest due under the parties' contract is hereby forfeited.