**ROBERT MANGOLD and SHARON MANGOLD, Plaintiffs**

v.

**ROBERT G. WILSON, Defendant**

Civil No. 1987/70

District Court of the Virgin Islands

Div. of St. Croix

September 16, 1988

109

GERALD T. GRONER, ESQ., St. Croix, V.I., *for plaintiffs*

WARREN B. COLE, ESQ., St. Croix, V.I., *for defendant*

O'BRIEN, *Chief Judge*

## MEMORANDUM OPINION

■ Recipients of interest payments in excess of the maximum legal rate are strictly liable in the Virgin Islands to the payors for double the amount of interest paid,[1] unless said payments are pursuant to a first priority mortgage greater than $100,000.[2] These cross-motions for summary judgment require us to determine the applicability of various defenses involving respectively the theories of equity, estoppel, and assignment. Because we reject the viability of these defenses, and no other material facts are in dispute, judgment will be entered in favor of the payors.

## I. FACTS

The plaintiffs, Robert and Sharon Mangold, entered an "Offer to Purchase" agreement with the defendant, Robert G. Wilson, on January 23, 1985 for the purchase of real property known as No. 2 Estate Boetzberg, St. Croix, United States Virgin Islands. The purchase price was $340,000. $10,000 was paid down. $100,000 was to be paid upon closing, and the balance was due before December 15, 1985 when title would pass. Interest payments in the amounts

---

[1] Gillivan v. Austin, 640 F. Supp. 1325, 1328 (D.V.I. 1986); Barclays Bank v. Creque, 13 V.I. 163, 167 (D.V.I. 1976).

[2] 11 V.I.C. § 951(b)(6) states in relevant part that "[f]irst priority mortgage loans in excess of $100,000 are exempt from the maximum interest rate limitations...."

$6,100, $8,500, $8,500 and $8,500 were respectively due on March 30, 1985, June 30, 1985, August 30, 1985 and December 15, 1985.[3]

Closing was scheduled for the week of February 18, 1985. However, an amendment to the Offer to Purchase was executed on January 24, 1985.[4] Although it did not alter the payments, paragraph 6 stated that if the Mangolds made a payment of $130,000 upon closing, Wilson would immediately transfer title and take back a second priority mortgage.

The Mangolds closed on February 22, 1985 by making the $100,000 payment. Thereafter, they made the March 30, 1985 interest payment of $6,100 and the June 30, 1985 interest payment of $8,500.[5] However, they failed to make either the August 30, 1985 interest payments or the principal or interest payment due on December 15, 1985. As a result, Wilson delivered a notice to quit and default dated December 23, 1985.[6] Subsequently, the parties reached an agreement ("second addendum") on March 6, 1986 for full payment.[7] Reflecting the Mangolds' default, it required the Mangolds to cure the default within 60 days with additional interest payment of $13,569.64 on top of the principal and interest already owing. The Mangolds never cured, rather, on April 25, 1986, they assigned their interest in the agreement to Robert Armstrong,[8] who satisfied the agreement and received a deed.[9]

The Mangolds then instituted this action on May 19, 1987 to recover double the amount of the two interest payments they made of $6,100 and $8,500. Their motion for summary judgment followed.

In his cross-motion for summary judgment, Wilson contests the Mangolds' standing to assert this claim given their assignment to Armstrong. He adds that even assuming Armstrong reassigned the claim to the Mangolds, it is barred by the statute of limitations.

Alternatively, Wilson suggests that the double penalty provisions of the statute ought to be read to exempt land sale contracts in excess of $100,000 since they are similar to first priority mortgages which are exempt from the maximum interest rate limitations.

---

[3] Mangolds' exh. 1.

[4] Mangolds' exh. 2.

[5] Aff. of Robert Mangold; Wilson Ans. at ¶ 12.

[6] Mangold exh. 11.

[7] Mangold exh. 5.

[8] Mangold exh. 6.

[9] Mangold exh. 8.

Wilson also asserts that in any case, the transaction originated with the Mangolds, and therefore, they are estopped from pleading usury.[10]

In respect to his estoppel defense, Wilson states by way of affidavit:

> Through my real estate agent, Mrs. Caroline Stuart-Jervis, I was approached by plaintiffs herein regarding the prospective purchase of real property. Although I did not want to grant extended payment terms for the purchase of real property, I was prevailed upon by Mr. Mangold to grant extended payment terms, with immediate possession to be granted to the vendees despite the fact that I would not have received the full purchase price.
>
> When discussing the matter with Mr. Mangold, I pointed out that the granting of immediate possession, with extended payment terms, would deprive me of prospective rental income during the period of time that their final payment remained pending. I proposed, therefore, that additional sums be paid to compensate for rentals I would otherwise have received.
>
> Upon the affirmative suggestion of Mr. Mangold the offer, when structured, contained provisions for the periodic payment of interest. Mr. Mangold specifically requested that all such additional payments be characterized as interest so that he could deduct these amounts from income in order to minimize his income tax liabilities.
>
> The offer of periodic payments of "interest", as set forth in the Offer to Purchase, which I accepted, originated solely with Mr. Mangold, and not from me.

Aff. of Wilson ¶¶ 4–7, 9.[11]

In response, the Mangolds refer us to Robert's affidavit in which he states:

> The defendant wanted to sell his property for cost in the amount of $330,000.

---

[10] Wilson does not fault the mathematics found in the Mangolds' January 13, 1988 brief which suggests the following: on January 23, 1985, 11 V.I.C. § 951 stated that the maximum rate of interest shall be New York Citibank prime plus two percent. (Amended July 30, 1982, Act No. 4734.) On January 23, 1985 the New York Citibank prime rate of interest was 10.5%. See Mangold exh. 9. However, the effective annual interest rate on the agreement at issue was 16.78%.

[11] Wilson exh. A.

I proposed a purchase with part payment in cash and the balance deferred.

The defendant insisted on compensation for the deferred payment, I concurred. ·

The defendant established the terms of the payment; he set the final payment due date, the number of interim payments and the amount of each payment.

At no point did the defendant suggest that the interim payments were in lieu of rent and, on information and belief, the defendant had rarely rented the property in the past.

My only input with regard to the payments was a. request that the first payment be reduced from $8,500 to $6,100 to reflect the fact that the contract wasn't signed until late January and the closing on the contract wasn't to be until February.

Neither my wife or I were represented by counsel or a realtor during the course of the negotiations.

Robert Mangold aff. at ¶¶ 6–12.[12] Wilson was represented by counsel.

## II. DISCUSSION

A. *Assignment*

■ The statutory right to receive double the amount of interest paid upon a usurious contract in the Virgin Islands is clearly personal to the borrower.[13] Garcia v. Perez, 2 V.I. 119, 125 (D.V.I. 1948). The majority of jurisdictions maintaining similar statutes preclude the assignment of this type of claim.[14] Interest and Usury, 45 Am. Jur. 2d § 320 at 244 (1969); Interest and Usury, 47 C.J.S. § 244 at 410 (1982); see, e.g., General Elec. Credit Corp. v. Best Refrigeration, 222 Neb. 499, 385 N.W.2d 81, 83 (Neb. 1986); Maners v. Lexington City Savings & Loan Association, 275 So. C. 31, 267

---

[12] Mangold exh. 12.

[13] 11 V.I.C. § 953 provides:

If usurious interest, as defined by sections 951 and 952 of this title, shall be received or collected, the person or persons paying the same, or their legal representatives, may by an action brought within two years after such payment, receive from the person, firm, or corporation, having received the same, double the amount of the interest so received or collected.

[14] One court descriptively gave what we believe is convincing reasoning:

If, as suggested by our cases, the purpose of the usury acts is to protect the necessitous borrower or his privies in blood or estate and not to punish the

S.E. 422 (S.C. 1980); Houston Sash and Door Co. v. Heaner, 577 S.W.2d 217 (Tex. 1979). But see Hammelburger v. Foursome Inn Corporations, 54 N.Y.2d 580, 446 N.Y.S.2d 917, 431 N.E.2d 278 (N.Y. 1981).

This majority interpretation is based on the premise that the penalty provisions of these type statutes are to protect borrowers and not to punish lenders. Accord Zugelter v. Bank of America, 19 V.I. 561, 565 (D.V.I. 1983), aff'd, 728 F.2d 218 (3d Cir. 1984) (quotation omitted). It is simply inconsistent with this intent to allow borrowers to freely assign their cause of action. Thus, we will not allow it. The Mangolds have standing.[15]

B. *Equitable Mortgage*

■ We are well aware that this Court has applied the doctrine of equitable liens against those who received unjust enrichment upon property by mistake. See Bank of Nova Scotia v. Bloch, 19 V.I. 45, 54, 535 F. Supp. 1356, 1361 (D.V.I. 1982), aff'd without published opinion, 707 F.2d 1388 (3d Cir. 1983) (table) (citing Restatement of Restitution, §§ 170, 171 (1937)). Similarly, where the law allows for the application of an equitable mortgage, it does so only for the benefit of those whose interest in property is equitable. Osborne, *Mortgages* 31 (1970).

■ Yet, we believe that to apply these principles in favor of one who possessed legal title to property solely to grant an exemption to section 953 would be incongruous. Indeed, it would dilute the language of § 951(b)(6) exempting only first priority mortgages. Whatever the reason the legislature made this exclusion, we will not act to judicially amend a legislative act and expand the exception to a transaction entirely distinct from first priority mortgages.

---

lender, how may we justify the assignability of a cause of action for usury to a stranger or one merely seeking a windfall? The answer is apparent in this case. Here, the plaintiff, for an investment of $355, lived in a trailer house for more than 5 months, and then secured a judgment for $5,112.36. This will in no way benefit the original borrower, or in any way protect those intended to be protected by the law. We see no reason to depart from the law established by the import of our previous decisions, and hold that a cause of action on a usurious contract is not assignable to a stranger to the transaction.
Radar v. Burnett, 175 Neb. 663, 122 N.W.2d 747, 753 (Neb. 1963).

[15] We are not persuaded by the cases referred to us by Wilson that the right to assign ought to be ascribed to section 953. Thus, we have no occasion to reach Wilson's limitations argument.

114

## C. *Estoppel*

In Gillivan v. Austin, 640 F. Supp. 1325 (D.V.I. 1986), we noted that an estoppel defense is often available to a usury claim. Id. at 1329 n.5. We pointed out, however, that representation by counsel may preclude an estoppel defense. Id. (citation omitted).

■ To the extent Gillivan appears to generally allow for an estoppel defense, the discussion is dicta. In any case, where as here the lender was represented by counsel who reviewed the agreement, there can be no application of the estoppel defense, usury being a strict liability offense. See, e.g., Wolfe v. Elbert, 37 B.R. 934 (D.S.C. 1983) (applying South Carolina law).

## III. CONCLUSION

■■ We make three conclusions in the case sub judice: 1) that the right to recover double the amount of interest paid on a usurious contract is not assignable in the Virgin Islands; 2) that land sale contracts in excess of $100,000 are not exempt from the prohibition against usurious interest; and 3) that whether or not an estoppel defense is generally available, the uncontroverted facts as a matter of law preclude its application here. No other genuine and material facts being in dispute, summary judgment will enter in favor of the Mangolds for double the $14,600 in interest they paid to Wilson.

## SUMMARY JUDGMENT

THESE MATTERS are before the Court on cross-motions for summary judgment. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is ORDERED:

THAT the defendant's motion for summary judgment is DE-NIED.

It is further ORDERED:

THAT the plaintiffs' motion for summary judgment is GRANT-ED; and further

THAT judgment is entered in favor of the plaintiffs and against the defendant in the amount of $29,200.00.